## UNITED STATES BANKRUTPCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 15-15610-MER |
| SUN RIVER ENERGY, INC. | ) |
| | ) Involuntary Chapter 7 |
| Debtor | ) |

---

## SIERRA FOXTROT, L.P.'S MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY SCOPE OF AUTOMATIC STAY

---

Sierra Foxtrot, L.P. ("Sierra Foxtrot") asks this Court to clarify the scope of the automatic stay or in the alternative to enter relief from the automatic stay pursuant to Bankruptcy Rule 4001. This request relates to all of Sun River Energy, Inc.'s ("Sun River") former mineral interest located in Colfax County, New Mexico which is the subject of a lawsuit in Case No. D-809-CV-2015-00030, styled James E. Pennington v. Sun River Energy, Inc., et al, in the Eight Judicial District of Colfax County, New Mexico (the "Foreclosure Proceeding").[1]

Sierra Foxtrot brings this motion because the United States Trustee for Sun River Energy, Inc., Harvey Sender (the "Trustee"), filed an affidavit under the color of his office in the Foreclosure Proceeding claiming the property being foreclosed upon is subject to the automatic stay. As a matter of caution, Sierra Foxtrot seeks a ruling that the real property in question in the Foreclosure Suit is not subject to the automatic stay.

---

[1] Sierra Foxtrot's motion is a de facto request to for this Court to rule on the applicability of the automatic stay. However, Sierra Foxtrot does not agree the automatic stay applies to property formerly owned by debtor, Sun River Energy, Inc. in the Foreclosure Proceeding.

---

## Property in Question

Sun River was a publically traded oil and gas company whose largest asset was approximately 228,000 acres of fee mineral interest real estate located entirely within the County of Colfax in the State of New Mexico. This acreage has been colloquially referred to by most of the interested parties over the years, simply as the Colfax Property.[2] The Colfax Property is the subject of this motion. The Colfax Property description is set forth in App. 1-53.

## Relevant Procedural History

### *The Derivative Suit*

On June 4, 2012 the independent board of directors of Sun River issued three (3) secured promissory convertible promissory notes ( the "Notes")[3] to Sierra Foxtrot, LP (a Texas Limited Partnership), Thimothy S. Wafford, Individually ("Wafford") and James E. Pennington, Individually ("Pennington") (collectively "SWP").[4] The Notes were issued by Sun River as payment for damages relating to Sun River's breaches of Donal R. Schmidt, Jr's, Wafford's and Pennington's respective employment contracts. In addition, on the same day, Sun River executed a mortgage ("Mortgage") in favor of SWP encumbering all of Sun River's mineral

---

[2] The Trustee also refers to the property in his affidavit as the Colfax Property.
[3] The Notes are attached to Plaintiff's Original Complaint for Foreclosure and Money Due at App. 289-303.
[4] Sierra Foxtrot, LP is a Texas Limited Partnership and Donal R. Schmidt, Jr. is one of its limited partners along with his ex-spouse and their children. The partnership loaned Sun River considerable sums of money over several years during the term of Schmidt's employment and subsequently while he remained on the board as a director. Schmidt had Sun River issue a note directly to the partnership for tax and estate planning purposes.

interest in Colfax County, New Mexico.  App. 54-65.  The specific language relating to the

Colfax Property set forth in the Mortgage is:

>    For consideration paid, the receipt of which is hereby acknowledged, Mortgagor has mortgaged, granted, bargained, sold, assigned and conveyed, and by these presents, does mortgage, grant, bargain, sell, assign and convey unto Mortgagees, with mortgage covenants, the following:  **an undivided 47.5% unto Mortgagee Sierra Foxtrot, an undivided 47.5% unto Mortgagee Wafford and an undivided 5% unto Mortgagee Pennington**, in and to:

>    A.  ***The entire right, title and interest of Mortgagor of whatsoever kind and nature, including but not limited to interests in coal, oil and gas, gold, silver, timber and any other base or precious metals, and any other mineral rights of any type and nature, or any real property rights, oil and gas leasehold interests, royalty interests, and overriding royalty interests owned by Mortgagor in any and all land located in Colfax County, New Mexico.***  [Emphasis added].

>    B.  All of Mortgagor's interests (whether now owned or hereafter acquired by operation of law or otherwise) in and to all presently existing and hereafter created oil, gas and/or mineral unitization, pooling and/or communitization agreements, declarations and/or orders, and in and to the properties covered and the units created thereby (including, without limitation, units formed under orders, rules, regulations or other official acts of any federal, state or other authority having jurisdiction and the so called "working interest units" created under operating agreements or otherwise), which cover, affect or otherwise relate to the properties owned by Mortgagor in Colfax County, New Mexico;

>    C.  All of Mortgagor's interests in and rights under (whether now owned or hereafter acquired by operation of law or otherwise) all presently existing and hereafter created operating agreements, equipment leases, production sales, purchase, exchange and/or processing agreements, transportation agreements, farmout and/or farm-in agreements, salt water disposal agreements, area of mutual interest agreements, and other contracts and/or agreements which cover, affect, or otherwise relate to the properties described above or to the operation of such properties or to the treating, handling, storing, transporting or marketing of oil, gas or other minerals produced from (or allocated to) such property;

>    D.  All of Mortgagor's interest (whether now owned or hereafter acquired by operation of law or otherwise) in and to all equipment, improvements, materials, supplies, fixtures and other property (including, without limitations all wells, pumping units, wellhead equipment, tanks, pipelines, flowlines, gathering lines, compressors, dehydration units, separators, meters, buildings, and power, telephone and telegraph lines) and all easements, servitudes, rights-of-way, surface leases and other surface rights, which are now or hereafter used, or held for use, in connection with the properties described above, or in connection with the treating, handling, storing, transporting, or marketing of oil, gas or other minerals produced from (or allocated to) such property;

>    E.  All oil, gas, other hydrocarbons, and other minerals produced from or allocated to the Mortgaged Property, and any products processed or obtained therefrom (herein collectively called the "Production");

---

F.   All equipment, inventory, improvements, fixtures, accessions, goods and other personal property of whatever nature now or hereafter located on or used or held for use in connection with the Mortgaged Property (or in connection with the operation thereof or the treating, handling, storing, transporting, processing, or marketing of Production) and all renewals or replacements thereof or substitutions therefor;

G.   All contract rights, contractual rights, and other general intangibles related to the Mortgaged Property, the operation thereof (whether Mortgagor is operator or non-operator), or the treating, handling, storing, transporting, processing, or marketing of Production, or under which the proceeds of Production arise or are evidenced or governed;

H.   All proceeds of the Collateral or payments in lieu of Production from the Collateral (such as take-or-pay payments), whether such proceeds or payments are goods, money, documents, instruments, chattel paper, securities, accounts, general intangibles, fixtures, real property, or other assets.

All property described hereinabove is sometimes referred to as the "Mortgaged Property" or the "Collateral."

App. 55-6

Subsequently, on June 7, 2012 a group common shareholder's brought suit against the officers and directors of Sun River Energy, Inc. ("Sun River") (the "Derivative Suit"). The plaintiffs in that action alleged Sun River improperly issued "sham" promissory notes and mortgage to PSW. The Derivative Suit also alleged the officers and directors of Sun River including, but not limited to PSW, in connection with the improperly issued "sham" notes and mortgage, committed fraud, breached their fiduciary duties, self-dealt, were malfeasant, misused corporate assets, failed to disclose insider transactions, entered into unconscionable transactions, committed conspiracy, had undisclosed conflicts of interest, paid themselves excessive compensation, sold assets for less than fair market value, manipulated Sun River's stock price, released false information to the public, etc… App. 66-205.

On September 8, 2012 James E. Pennington resigned as the general counsel of Sun River. App. 206.

_____

**Motion to Clarify Automatic Stay**
**Page 4**

Then on February 1, 2013 Donal R. Schmidt, Jr. resigned as the President and CEO of Sun River Energy.  He remained as the chairman of the board.[5]  App. 207.

Thimothy S. Wafford remained as the Chief Operating Officer as Secretary of Sun River.

On October 3, 2015, after over two years and about $8 Million Dollars in legal fees expended by all parties, the plaintiffs in the Derivative Suit settled **all** claims against **all** defendants including SWP.  The settlement agreement ("Settlement") was reduced to writing. App. 208-17.

Pursuant to an order of the 134th Judicial District Court of Dallas, Texas dated October 10, 2014 the terms of the Settlement were published nationally to allow all interested shareholders an opportunity to object to the Settlement.  App. 218.

On December 12, 2014 the 134th Judicial District Court of Dallas County, Texas approved the Settlement, overruled all objections and entered a Final Order and Judgment.  App. 218-21.  The Final Order and Judgment released Schmidt, Sierra Foxtrot, Wafford and Pennington (collectively for this motion, "Released Persons").

Most notably, the Court's Judgement in Item 1 incorporated all reference and definitions in the Settlement.  App. 218 (para. 1).

No appeal was taken.  The Final Order and Judgment became final and non-appealable under Texas law on January 13, 2015.

---

[5] Schmidt resigned from the board on or about May 1, 2015.  Robert B. Fields is the sole remaining director of Sun River.  Two other independent directors had resigned earlier in 2014 and 2015.

Under the terms of the Final Order and Judgment, all claims, including those of the nature the US Trustee now apparently intends to assert against SWP were forever fully and finally released, with prejudice on December 12, 2015.

The relevant language regarding the Released Persons is as follows:

8.  The Action and all claims contained therein, as well as all of the Released Claims are hereby dismissed with prejudice. The Defendants are to bear their own costs and to pay the negotiated amount of attorneys' fees and costs to counsel for Plaintiffs in the amount of $700,000.

9.  Upon the effective date of this Order, Plaintiffs (acting on their own behalf and derivatively on behalf of Sun River) and each *Sun River shareholder* (solely in his, her or its capacity as a Sun River shareholder) *shall be deemed to have and by operation of the Final Order and Judgment, shall have fully, finally and forever released, relinquished and discharged the Released Claims against the Released Persons and any and all claims (including unknown claims) arising out of, relating to, or in connection with the defense, settlement or resolution of the Action against the Released Persons*.  [Emphasis added].

10.  Upon the effective date of this Order, Sun River and each Sun River shareholder (solely in his, her or its capacity as a Sun River shareholder) shall be deemed to have and by operation of the judgment shall have fully, finally and forever released, relinquished and discharged each and all of the Plaintiffs and Plaintiffs' Counsel from all claims (including unknown claims) arising out of, relating to or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the released claims.

11.  *Sun River Plaintiffs* (acting derivatively on behalf of Sun River) *and each Sun River shareholder* (solely in their capacity as a Sun River shareholder) *are hereby forever barred and enjoined from instituting and/or prosecuting any other action against the released persons in any court or jurisdiction asserting any released claims*. [Emphasis added].

App. 219-20.

### The Receivership and Sale of the Colfax Property

Sadly, during the pendency of the Derivative Suit, Sun River slowly ceased to function primarily because it was unable to cope with falling gas prices and unable to raise funds under the specter of protracted litigation.  Sun River basically slowly bled to death and eventually ceased to operate.  Sun River was beset by litigation on all fronts.  Unfortunately, Sun River did

not have the resources and/or capital to respond to most of the litigation and/or to settle its disputes and obligations.

On November 18, 2013 in one such lawsuit styled Robert Wilkinson, et al, v. CPR Operations, L.P., et al, Cause No. 13-11-12339 CV in the 410th Judicial District Court of Montgomery County, Texas a Final Judgment for money damages was awarded against Sun River.  App. 222-27.   This appears to be the default the Trustee now complains of in his affidavit.[6]  As discussed below, the Trustee's complaint is not supported as a matter of law.

Then, on September 19, 2014, upon the judgment creditor's motion, the Court in the 410th appointed a receiver for Sun River (the "Receivership").  App. 228-35.  Subsequently, the Receivership was amended to include the Texas Turnover Statute.  App. 236-7.

During the pendency of the Receivership, the receiver sought to sell the Colfax Property to pay the judgment creditor.

On January 28, 2015 the Court in the Receivership approved the receiver's motion and ordered Sun River to sell the Colfax Property, subject to all liens and encumbrances to Lockhart Oil and Gas, LLC ("Lockhart").  App. 238-41.

On April 29, 2015, Nova Leasing, LLC ("Nova"), a petitioning creditor herein, attempted to intervene in the Receivership by objecting to the court ordered sale.  App. 242-256.

Nova objected to the finding by the court that the sales price was fair.  They further objected because the property might be worth $80 Million.  They also objected that shareholders

---

[6] The Trustee's affidavit is vague.  He could be complaining about a default in the Foreclosure Proceeding.

might get equity if the property was sold another way.  They then objected the alleged equity might be lost to the shareholder if sold.  And they finally raised an objection about alleged ongoing fiduciary duties to the company by Sun River's management including claims by the shareholders that management in foreclosing on their liens would use the court's order as a defense against said claims.  App. 244-45 (para. 9-13).

On May 8, 2015 the court in the Receivership held a hearing on Nova's objections.  The court overruled Nova's objections and struck Nova's intervention as a matter of law.  App. 257-58, 382-437.

On May 14, 2015 at 1:06 p.m., Lockhart filed the Mineral Deed evidencing its purchase of the Colfax Property from Sun River in the real property records of Colfax County, New Mexico.  App. 259-61.

On May 19, 2105 the Receivership was closed by order of the court.  App. 262-64.

On May 21, 2015 Nova filed a notice of appeal to the 9th Court of Appeals, Beaumont, Texas.  Nova did not file an emergency appeal nor did it post any bond.  Nova sought no injunctive relief from the Texas courts of appeal.  Nova then voluntarily abated its appeal when it brought this action as a petitioning creditor.  App. 265-67.

### *The Foreclosure Suit*

On March 3, 2015 James E. Pennington filed a foreclosure proceeding under the terms of the Mortgage in the Foreclosure Proceeding.  App. 268-341.

On March 31, 2015 Nova filed its answer in the Foreclosure Proceeding.  App. 342-352.

On June 19, 2015 Pennington filed his Motion for Summary Judgment in the Foreclosure Proceeding to foreclose on the Colfax Property.  App. 353-77.

On July 22, 2015 the Trustee filed an affidavit in the Foreclosure Proceeding making numerous unfounded claims not supported by any evidence and/or legal authority.  App. 378-81.

Specifically, the Trustee claims in a portion of his affidavit the following:

8.   These claims necessarily include claims seeking to void any transfer of the Colfax County, New Mexico property ("Colfax Property") that is the subject of this foreclosure proceeding.

9.   ***It has been represented to me that the fair market value of the Colfax Property may be in excess of $80- 100 million.***  [Emphasis added].

10.  It appears that the Insiders negotiated a deal that gave them control over a corporate asset possibly worth in excess of $100 million in exchange for consideration that may range from nothing to no more than $5.5 million.

11.  In 2013, a purported creditor of Sun River, CPR Operations, Inc., commenced a Receivership case. Thereafter, a Receiver was appointed over Sun River's assets.

12.  Sun River, under the management and control of one or more of the Insiders, failed to respond or defend itself in the Receivership case.

13.  The Colfax Property was sold by the Receiver to Lockhart Oil & Gas, LLC ("Lockhart") for the sale price of $262,000, subject to existing liens. It appears that the sale price was only sufficient to pay the alleged debt of the purported creditor CPR Operations, Inc. and the expenses of the Receiver.

14.  The sale of the Colfax Property, sold for a small fraction of its alleged value to Lockhart, may be set aside as a fraudulent transfer or as a fraud upon the court.

15.  I intend to file an adversary complaint against Lockhart to avoid the sale of the Colfax Property and recover the Property for the benefit of Sun River's Bankruptcy Estate.

16.  Based upon my investigation to date, this foreclosure proceeding, as it relates to Sun River and the Colfax Property, also appears to be a fraud upon the court as the Insiders have acted on both sides of the case. For example, prior to the bankruptcy filing, Sun River remained under the control of one or more of the Insiders. Those same Insiders seek to enforce their purported liens against the Colfax Property through foreclosure. While under the Insiders' control, Sun River failed to answer the complaint or respond to the motion for default judgment, thereby creating the conditions needed for foreclosure.

17.   As of the date of this affidavit, I am barred by the automatic stay from moving to set aside the default judgment in this case. *Likewise, any further action taken with respect to the Colfax Property is barred by the automatic stay.*  [Emphasis added].

Interestingly enough, much of the Trustee's content in his affidavit is either taken *verbatim* from the Derivative Suit or Nova's pleadings in the Receivership.

On July 27, 2015 Nova filed its response to Pennington's Motion for Summary Judgment, App. 438-44.  In its response Nova adopts the Trustee's statements ***verbatim*** and also claims the automatic stay prohibits the New Mexico court from proceeding.  App. 439-41 (para. 4-16).

### *The Bankruptcy Proceeding*

On May 21, 2015 Nova and three other creditors filed a petition in this Court seeking relief under Chapter 7.  Dkt. # 2.

The Court is currently considering motions to transfer venue.  The schedules and creditor's matrix has been filed of record.

### <u>The Issue</u>

The question before the Court is whether the automatic stay applies to the Colfax Property in the Foreclosure Proceeding?

Movant respectfully submits, as a matter of law, it does not.

Nova's actions herein and the United States Trustee's actions in the Foreclosure Proceeding constituent an improper collateral attack on two (2) different final non-appealable

---

State Court judgments in Texas and interference in a State Court proceeding in New Mexico over which this Court does not have jurisdiction.

## Argument and Authorities

### *In Rem Action in the Foreclosure Proceeding*

It is undisputed the involuntary petition in the Foreclosure Proceeding was filed *after* Sun River sold all of its interest in the Colfax Property pursuant to a valid and final order of a Texas District Court and prior to the filing of this case.

First, Pennington in the Foreclosure Proceeding is moving *in rem*.  "A judgment of foreclosure applies only to the property secured by the mortgage, and does not impose any personal liability on the mortgagor."  *Kepler v. Slade*, 1995-NMSC- 035, ¶ 8, 119 N.M. 802.  A creditor whose debt is secured by a mortgage may elect to pursue his remedy in rem to subject the mortgaged property to its payment. *Id.*

It is undisputed Pennington is proceeding in this manner, in this motion for summary judgment.  He only seeks to foreclose on the Colfax Property, and since Sun River no longer owns the Colfax Property, the automatic stay does not operate to prevent that proceeding from going forward.  *In re Everchanged, Inc.,* 230 B.R. 891, 893 (Bankr. S.D. Ga. 1999) (refusing to set aside a foreclosure proceeding because the real estate had been conveyed pre-petition from the Debtor to a third party, so the property no longer belonged to the debtor's estate and the automatic stay provisions of the bankruptcy code did not apply). *See also In re Moore,* 410 B.R. 439, 441 (Bankr.E.D.Va.2009) ("[T]he automatic stay does not stay collection actions against other parties who may be liable with the debtor *nor does it stay actions against property that is*

*not property of the bankruptcy estate*.") (emphasis addedd);  *Hudgins v. Life Savings Bank (In re Hudgins),* 153 B.R. 441, 444 (Bankr.E.D.Va.1993) ("The automatic stay provision of 11 U.S.C. § 362(a) applies only to debtors in bankruptcy *and then only to their property*.") (emphasis added).  The line of cases cited by Pennington in the Foreclosure Proceeding is consistent with the Supreme Court holding in *BFP v. Resolution Trust Corp*., 511 U.S. 531 (1994).  This line of reasoning will be more fully explored later.  Regardless, it is undisputed the Colfax Property was sold prior to this proceeding and is therefore not part of the bankruptcy estate at this time.

*Jurisdiction and Rooker-Feldman*

Second, even assuming the Trustee is correct in some of his assertions in his affidavit this Court does not have jurisdiction over ownership of the property by Lockhart.  The line of reasoning set forth above tracts the *Rooker-Feldman* doctrine which prohibits the Trustee from using the bankruptcy court to prevent foreclosure of the Colfax Property as the Trustee states he intends to do in his affidavit.

With respect to the issue of jurisdiction, federal courts including bankruptcy courts are of limited jurisdiction.  *Wylie v. Bank of New York Mellon*, 856 F. Supp. 2d 837, 843 (E.D. La. 2012).  The *Rooker–Feldman* doctrine denies federal courts subject matter jurisdiction to review or modify the final decisions of state courts unless there is a federal statute that specifically permits such a review.  In short, *Rooker–Feldman* prohibits collateral attacks on state court judgments.  *Id*.  When some aspect of a federal complaint is grounded in a state court proceeding, the federal court lacks jurisdiction.  *Id* at 845.  This is clearly the case here.

_____

Rooker-Feldman has often been applied to preclude bankruptcy court review of state court decisions. See R*eitnauer v. Texas Exotic Feline Found., Inc.*, 152 F.3d 341 (5th Cir.1998); *Baldino v. Wilson*, 116 F.3d 87 (3d Cir.1997); *Goetzman v. Agribank, FCB,* 91 F.3d 1173, 1177 (8th Cir.); *Besing v. Hawthorne*, 981 F.2d 1488, 1496 (5th Cir.) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court.") (quoting *G & R Mfg. Co. v. Gunia*, 91 B.R. 991, 994 (Bankr.M.D.Fla.1988)), cert. denied, 510 U.S. 821 (1993); *Ferren v. Searcy Winnelson Co.*, 227 B.R. 279 (8th Cir. BAP 1998); *Hatcher v. United States Trustee*, 218 B.R. 441, 446-447 (8th Cir. BAP 1998); *Beardslee v. Beardslee*, 209 B.R. 1004 (Bankr. D. Kan.1997).

*Rooker-Feldman* Doctrine even applies to claims of fraud such as the Trustee insinuates. The *Rooker-Feldman* doctrine applies even when a party alleges there was fraud in obtaining the state court judgment.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); LeCates v. Barker, No. 00–4026, 2000 WL 1717184 (10th Cir. Nov. 16, 2000) (unpublished) (refusing to determine whether a Utah state court judgment was fraudulently obtained because such action is barred by the *Rooker-Feldman* doctrine); *Taylor v. Federal Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (holding the *Rooker-Feldman* doctrine prevented consideration of the plaintiff's claim that a state court judgment should be avoided on the basis of fraud); W*ylie v. Bank of New York Mellon*, 856 F. Supp. 2d 837, 844 (E.D. La. 2012); and *Jage v. Trust Co. of Okla.*, No. 06–249, 2009 WL 3241659, at *5 (N. D. Okla. Sept.30, 2009).

_____

In the Trustees' affidavit in paragraphs 8, 9, 11, 12, 13 and 14 he complains about the Receivership and sale of the Colfax Property therein.   These paragraphs directly track the paragraphs in Nova's ill-fated intervention.  App.  242-56.  Specifically, in the Trustee's affidavit paragraphs 9, 13 and 14 are set out in Nova's pleadings in paragraph 11.  App. 379-80, App. 244. The Trustee's paragraphs 10 and 12 are in Nova's paragraph 13.  App. 379-80, App. 245.

A simple reading of the order granting the sale of the Colfax Property address each of these complaints.  App. 257-58.  In addition, the Court can see that counsel for Nova at the hearing in April in the 410th Judicial District Court where the court considered Nova's argument, all objections were fully explored.  App. 402-10, 417-21.

A Texas District Court with proper notice to all parties ordered the Colfax Property sold months prior to the filing of this case.  Lockhart became the bona fide purchaser and owner of the Colfax Property through the Texas District Court action.  This Honorable Court may not interfere with that final order.

Additionally, "other courts have explicitly held that a plaintiff who fails to raise procedural problems at the time of the state court action may forfeit his right to later federal review and that claims solely for damages may be barred by *Rooker–Feldman*.   *Id discussing Garry v. Geils,* 82 F.3d 1362, 1369 (7th Cir.1996).  Clearly, Nova was late as their intervention was struck.

"Just as a complainant 'cannot re-litigate issues that should have been raised in state court and defeat the operation of the *Rooker–Feldman* doctrine by casting a complaint as a civil rights violation,' a plaintiff should not be able to carefully structure his requested relief in order to

collaterally attack a prior judgment." *Wylie* at 845. This is what Nova and the Trustee are both attempting to do.

Continuing on, a claim is barred by *Rooker–Feldman* under two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action" or (2) "if the federal claim in inextricably intertwined with the state court adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper,* 407 F.3d 573, 580 (3rd Cir. (Pa.) 2005). In this instance the sale of the property from Sun River occurred by state court adjudication prior to this case being filed. The *Rooker–Feldman* doctrine prevents "inferior" federal courts from sitting as appellate courts for state court judgments, *see, e.g., Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.,* 973 F.2d 169, 173 (3d Cir.1992). Clearly, the Trustee is looking at setting aside the state court judgment and he is predicating his anticipated relief upon the basis the state court was wrong. This is exactly what *Rooker-Feldman* is supposed to prevent.

The Supreme Court has decided the *Rooker–Feldman* doctrine applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.,* 544 U.S. 280, 284 (2005). The Supreme Court holds these types of actions are "out of bounds" *Id*.

This is the exact situation here. Nova is a state court loser. Not one but twice and possibly three times if the Court considers they are not the prime mortgage holder in the Foreclosure Proceeding. See App. 368. They lost on their objections in the Receivership and

now vis-à-vis the Trustee they want this Court to set aside a Texas State Court judgment. Nova has apparently co-opted the Trustee to assist them based upon Nova's and the Trustee's filings in New Mexico.

In order to ostensibly avoid *Rooker-Feldman*, the Trustee states that a fraudulent transfer occurred which would presumably constitute a federal claim not litigated in the state court action. He is not necessarily clear as to what fraudulent transfer he contends occurred. If he is referencing the sale from Sun River to Lockhart he lost the right to complain on January 23, 2015. Federal courts have held that a party who fails to raise state court complaints loses the right to federal review. *Wylie* at 845. (The Trustee has no greater rights than Nova in the Receivership.)

In this instance, the order coming out of the Texas state court specifically stated the price was for fair value, all parties had received notice, the sale was properly made and in conformity with Texas law. App. 238. Nova attempted to cure this issue and to get the Texas court to state in its judgement that it was not for a fair value in its intervention which was untimely as a matter of law. App. 243. Nova raised both the issue that it was a creditor and a shareholder in its objections. App. 242-45.

After the hearing on the objections, the court entered an order denying all relief requested by Nova. App. 257-8.

When the Trustee complains in his affidavit of possible fraudulent behavior on behalf of insiders that argument also fails. It is undisputed, Nova is a shareholder of Sun River and was at the time of the settlement of the Derivative Suit. In fact, Nova's attorneys at the firm of

Carrington Coleman who filed the intervention in the Receivership, represented another Sun River shareholder who objected to the Settlement of the Derivative Suit in December, 2014. Specifically, Carrington Coleman who now represents Nova represented Robert Doak whose attorneys have appeared herein as well.  It therefore cannot be disputed Nova had actual notice of the Derivative Suit.  Regardless, the exact issues, parties and facts the Trustee complains of in his affidavit were set forth in the Derivative Suit, *ad naseum*.  Not only does *Rooker-Feldman* prevent this but so does the concept of Res Judicata.

*Res Judicata*

The doctrine of *res judicata* bars the Trustee from contesting the validity of the Texas court's order approving the sale to Lockhart.  The principle of claim preclusion "precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Kirby v. Guardian Life Ins. Co. of Am. (Kirby II)*, 2010–NMSC–014, ¶ 61, 148 N.M. 106, 231 P.3d 87 (emphasis, internal quotation marks, and citation omitted).

*Res judicata* in the Tenth Circuit requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.  *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 686 (10th Cir.1992).  All four elements are met in this instance.  It is undisputed, Nova was a shareholder and given notice of the Derivative Suit.  The exact same allegations the Trustee makes were made in the Derivative Suit and Nova's attorneys represented another creditor who appeared in the Derivative Suit.

_____

The first element is met because the order approving the sale to Lockhart is final. The second element is met because Sun River was a party in the receivership. The doctrine of *res judicata* applies to the Trustee because it is in privity with Sun River. *See, Rosette, Inc.,* 2007–NMCA–136, ¶ 33 (res judicata applies to a party or its privies); and *Hartford Ins. of the Midwest v. Tollardo,* 409 F. Supp. 2d 1301, 1309 (D. N.M. 2005) (collateral estoppel applies to one in privity with a party to a prior adjudication). The third element is met because the Trustee purportedly plans to attack the Texas court judgment. Accordingly, the trustee is barred by *res judicata* from contesting the validity of the court's order.

As such, there is little to be added to the doctrine of *res judicata* as developed in the case law of the Supreme Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352-353 (1877). Every single allegation, and then some, the Trustee refers to in his affidavit was raised in the Derivative Suit with the exception of allegations in the Foreclosure Proceeding. App. 71-75, 79, 81, 86-88, 103-108, 90-100, 113, 116, 119-35.

A line-by-line examination of the Trustee's statement in paragraph 15 of his affidavit is telling. He first claims the liens on the Colfax Property are "purported." They are not. The Settlement in the Derivative Suite leaves the Mortgages intact and unmodified as to SWP. App. 213. In short, there were no changes to the Mortgage as a result of the Derivative Suit. A short review of the Sixth Amended Petition in the Derivative Suit shows that the primary focus of the suit was the legality, validity and appropriateness of Sun River's granting of the Promissory

Notes and Mortgage to SWP.  App. 71, 86. Once these issues were fully and completely litigated any complaint about the allegations related to the Notes and Mortgages forever died in the Final Order and Judgment which incorporated the Settlement.  The Mortgages were clearly and properly recorded in Colfax County, New Mexico.  They are indeed valid and enforceable liens and they are not "purported" as a matter of law.

The Trustee goes on to complain about insiders foreclosing.  Since the Mortgage was not disturbed by the Derivative Suit Settlement and Final Order and Judgment, if the terms of the Notes and Mortgage are breached the insiders have an undeniable right to foreclose.

The Trustee then complains about how while the under the insider's control, Sun River failed to answer the complaint or respond to the motion for default judgment thereby creating a need for foreclosure.  This entire statement is hollow.

First, it is not clear which complaint and/or default the Trustee is referring to.  It matters not.

If the Trustee is referring to the Receivership, the initial complaint, default judgment, and the appointment of the receiver which resulted in the sale of the Colfax Property all occurred well before the Released Persons were fully and completely released for any and all causes of action, known or unknown in the Settlement and Final Order and Judgment.

If the Trustee is referring to the New Mexico complaint and foreclosure proceeding he is also mistaken.  For example, the Mortgage had been in default and never cured since the first

_____

**Motion to Clarify Automatic Stay**
**Page 19**

receiver was appointed over Sun River in 2013.[7]   The receiver appointed in the Receivership proceeding was also an event of default under the Notes.   App. 59.   Both of these defaults occurred well before the release of the Released Persons (insiders) in December, 2014.

Continuing on, at the time Pennington filed for foreclosure, no payment on the underlying promissory notes had ever been made.   Not prior to the release and not after.   Even after the extension that was granted extending the term of the Notes as a result of the Settlement no payment was made to the insiders.   And even if any payment had been made, a bankruptcy proceeding is an event of default under the Notes.[8]   App. 59.   It is further undisputed that there has never been any cure of any default.

*An Adversary Proceeding does not make Non-Owned Property Subject to the Automatic Stay*

Finally, assuming arguendo, the Trustee's supposed future adversary proceeding survives a Rule 12 (b) motion in light of *res judicita,* the issue of whether the Colfax Property is subject to the automatic stay is still not before this Court.   The Tenth Circuit has unequivocally held an adversary proceeding grounding in a fraudulent transfer claim does not invoke the automatic stay because the property is not part of the bankruptcy estate.   Specifically, in *Rajala V. Gardner*, 709 F.3d 1031, 1039 (10th Cir. 2013) the Tenth Circuit held "fraudulently transferred property is not part of the bankruptcy estate ***until recovered.*"** [Emphasis added].

---

[7] There has been more than one receivership action against Sun River in Texas since the Notes and Mortgage were granted.
[8] So even if the Trustee is correct, Nova by filing this action created and undeniable evet of default under the Notes therefore allowing the Foreclosure Proceeding to go forward.

With respect to recovery under an adversary proceeding, the Trustee must mount a meritorious case under the specter of fraudulent transfer *and* win.  He cannot accomplish this. Specifically, the sale from Sun River to Lockhart was a court "forced" sale made in compliance with Texas law.  The court in Texas utilized the Texas Turnover Statute codified in Tex. Civ. Prac. &  Rem. Code 32.002 to take jurisdiction over the Colfax Property.  Normally, the Trustee would only need to prove the price received was not "reasonably equivalent value."   However, since the sale was a "forced" sale by a court, such determination is not required under *BFP v. Resolution Trust Corp*., 511 U.S. 531 (1994).  In *BFP* the Supreme Court reasoned forced sales under judicial oversight and in compliance with state law are not subject to the term of "reasonably equivalent value" under 11 U.S.C.A. 548.  *Id.* at 545.

This type of test has been applied in the Tenth Circuit.  Specifically, it has been held in the District of New Mexico that *BFP* applies to other real property transactions than just strict foreclosure proceedings.  S*ee McCanna  v. Burke*, 197 B.R. 333 (D. N.M. 1996) extending *BFP* to real property contracts with respect to the question of fair market value and reasonably equivalent value.  In *McCanna* the New Mexico District Court examined the same situation as found here.  Was a forced sale compliant with state law?  If so, then the distressed situation should be valued in light of the facts known at the time under state law.  In the Receivership, the court determined this exact situation and used this type of language.

The order in question states **"The Court further finds that the Property has been sold for a fair price under the circumstances and that such sale was properly made by Michael**

**L. Fuqua in his capacity as Court appointed Receiver for Sun River Energy, Inc., and in conformity with the law."** [Emphasis added].  App. 238.

### Prayer

Movant request this Court to enter an order stating that the automatic stay does not apply to the Colfax Property and for all other relief to which it is entitled under law.

Dated August 25, 2015

Respectfully submitted,

THE LAW FIRM OF DONAL R. SCHMIDT, JR.

*s/ Donal R. Schmidt, Jr.*
Donal R. Schmidt, Jr.
5646 Milton St.
Suite 130
Dallas, Texas 75206
Telephone: 214-236-1363
Facsimile: 877-676-8527
Email: donschmidtlaw@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2015 I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel requesting notice to be served by electronic means on the date of filing.  All parties with notice were served by US Mail.

s/ Donal R. Schmidt, Jr.
Donal R. Schmidt, Jr.