**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| SUN RIVER ENERGY, INC., ) | Case No. 15-15610 MER |
| ) | Chapter 7 |
| Debtor. ) | |

---

**MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN TRUSTEE, DONAL R. SCHMIDT, JR., SIERRA FOXTROT, L.P., AND JAMES E. PENNINGTON**

---

Harvey Sender, chapter 7 trustee, by and through his counsel, Sender Wasserman Wadsworth, P.C., respectfully moves this Court to approve a Settlement Agreement between the Trustee, Donal R. Schmidt, Jr., Sierra Foxtrot, L.P., and James E. Pennington. In support of the Motion, the Trustee states as follows:

Background

I.      Case Commencement and Parties

1.      On May 21, 2015 (the "Petition Date"), an involuntary petition seeking chapter 7 relief was filed against Sun River Energy, Inc. ("Sun River") in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") and assigned Case No. 15-16510 MER (the "Bankruptcy Case").

2.      No objections to the involuntary petition were filed and, on June 17, 2015, an Order for Relief and Procedure in Involuntary Case entered in the Bankruptcy Case.

3.      On June 18, 2015, Harvey Sender was appointed trustee (the "Trustee") of Sun River's bankruptcy estate (the "Estate").

4.      Donal R. Schmidt, Jr. ("Schmidt") is the former President, Chief Executive Officer and Chairman of the Board of Directors of Sun River.

5.      Sierra Foxtrot, L.P. ("Sierra Foxtrot") is a family partnership. Schmidt asserts that he is the managing member and general partner of Sierra Foxtrot.

6.      James E. Pennington ("Pennington") is the former General Counsel and Corporate Secretary of Sun River.

7.      Thimothy S. Wafford ("Wafford") is the former Chief Operating Officer of Sun River.

II.     Former Officers' Settlement with Sun River

8.      In 2012, Schmidt, Pennington, and Wafford (collectively referred to hereinafter as the "Former Officers") asserted that Sun River had breached their employment agreements by, among other actions, failing to pay wages, vacation pay, benefits and bonuses allegedly owing thereunder.

9.      The Former Officers and the Sun River Board of Directors negotiated a settlement of the Former Officers' alleged employment claims and the settlement was approved by the Sun River Board of Directors.

10.     The settlement provided for the granting by Sun River of the following: (i) a promissory note payable to Pennington (the "Pennington Note") in the principal amount of $298,791.57; a promissory note payable to Schmidt's designee Sierra Foxtrot in the principal amount of $2,545,896.10 (the "SF Note"); a promissory note payable to Wafford in the principal amount of $2,545,896.10 (the "Wafford Note" and, together with the Pennington Note and the SF Note, the "Notes"); and a first mortgage (the "Mortgage") to Pennington, Sierra Foxtrot and Wafford against all of Sun River's real and personal property interests in Colfax County, New Mexico (the "Colfax County Property").

11.     It has been represented to the Trustee that the value of the Colfax County Property may exceed $80 million.

12.     The Notes are all dated June 4, 2012, and originally included an interest rate of 4% per annum, a maturity date of December 4, 2012, and a provision for the payment of attorneys fees incurred in collecting any amounts due under the notes.

13.     Sierra Foxtrot and Wafford were each granted a 47.5% interest in the Mortgage. Pennington was granted a 5% interest in the Mortgage.

14.     Paragraph 8(c) of the Mortgage grants each of the mortgagees the individual right to compromise the Mortgage "in such order or manner" as they elect.

15.     The Notes and Mortgage and the Board of Directors' approval of the Notes and Mortgage were challenged in a shareholder derivative lawsuit filed in the 134th Judicial District Court of Dallas County, Texas (the "Derivative Suit"). The Derivative Suit was captioned *Neiger et al. v. Sun River et al.*, Case No DC-12-06318.

16.     On October 3, 2014, the plaintiffs in the Derivative Suit settled all claims against all defendants in the Derivative Suit (the "Derivative Settlement"). Pursuant to court order, the terms of the Derivative Settlement were published nationally to afford interested parties an opportunity to object.

17. On December 12, 2014, the court in the Derivative Suit overruled all objections, approved the Derivative Settlement and entered a Final Order and Judgment. The Final Order and Judgment was not appealed.

18. As relevant to this Settlement Agreement (the "Agreement"), the approved Derivative Settlement included the following terms:

(i) a release of all shareholder claims against the Former Officers;
(ii) an extension of the maturity dates of the Pennington Note to December 12, 2016 and the SF Note to December 12, 2017;
(iii) a requirement that Sun River pay at least 5% of the outstanding balance of the Pennington Note on the 120th day following entry of the Final Order and Judgment, and every 120th day thereafter;
(iv) a requirement that Sun River pay at least 3% of the outstanding balance of the SF Note on the 120th day following entry of the Final Order and Judgment, and every 120th day thereafter;
(v) an increase in the interest rate on the Pennington Note to 6% per annum; and,
(vi) a provision granting the Former Officers the right to enforce all remedies under the Notes and Mortgage in the event of a payment default by Sun River.

III. The Receivership and Purported Conveyance to Lockhart

19. On November 18, 2013, in Case No. 13-11-12339 CV in the 410th Judicial District Court of Montgomery County, Texas, a default judgment entered against Sun River and in favor of CPR Operations, L.P. ("CPR") in the principal amount of $175,130.13 (the "Collection Action").

20. On September 19, 2014, CPR's Motion for Post-Judgment Receivership filed in the Collection Action was granted and Michael L. Fuqua (the "Receiver") was appointed receiver in the case pursuant to Sections 64.001, 31.002 and 32.002 of the Texas Civil Practice and Remedies Code. On December 18, 2014, the receivership was modified to clarify that the Receiver was pursuant only to Section 31.002 of the Texas Civil Practices and Remedies Code.

21. On January 23, 2015, the Receiver filed a motion seeking approval of the sale of the Colfax County Property subject to existing liens to Lockhart Oil & Gas, LLC ("Lockhart") for the sale price of $262,000.00.

22. The Receiver's motion to sell was approved by the court in the Collection Action on January 28, 2015.

23. On April 21, 2015, Wafford executed a Mineral Deed on behalf of Sun River to Lockhart, purporting to convey the Colfax County Property to Lockhart.

24. On May 14, 2015, the Mineral Deed was recorded with the clerk and recorder of Colfax County, New Mexico.

IV. The Foreclosure Action

25. Sun River failed to make the first payment due the Former Officers under the Derivative Settlement when it came due on April 11, 2015.

26. Prior to the first payment due date, Pennington commenced an action in the Eighth Judicial District Court, Colfax County, New Mexico (the "Foreclosure Action") seeking to foreclose the Mortgage.

27. In his complaint in the Foreclosure Action, Pennington asserted that certain other non-payment defaults had occurred prior to his commencement of the action—including the Receiver's purported sale of the Colfax County Property to Lockhart—thereby giving him the right to foreclose.

28. The Trustee has asserted at all times since his appointment that the Foreclosure Action was stayed by commencement of the Bankruptcy Case.

V. Contested Matters in the Bankruptcy Case

29. On June 22, 2015, Pennington filed a motion seeking dismissal of the Bankruptcy Case or, in the alternative, transfer of venue to the United States Bankruptcy Court for the Northern District of Texas (the "Venue Motion"). Schmidt, Sierra Foxtrot and Wafford all joined in the Motion to Dismiss or Transfer Venue.

30. The Trustee objected to the Venue Motion.

31. On August 25, 2015, Sierra Foxtrot filed a "Memorandum in Support of Motion to Clarify Scope of Automatic Stay" in the Bankruptcy Case. In this pleading, Sierra Foxtrot asserted that the automatic stay imposed in the Bankruptcy Case did not extend to the Foreclosure Action in New Mexico.

32. On August 25, 2015, the Bankruptcy Court set the Venue Motion for a two-day evidentiary hearing to commence on November 18, 2015.

33. On August 27, 2015, the Bankruptcy Court denied the request for dismissal included in the Venue Motion, thereby limiting the contested issues to the alternative relief requested of a venue change.

34. On August 27, 2015, the Bankruptcy Court also clarified that the automatic stay in the Bankruptcy Case "applies to any action involving the real property described by the parties as the 'Colfax Property' located in Colfax County, New Mexico" including, but not limited to, the Foreclosure Action. *See Order Clarifying Scope of Automatic Stay*, Docket No. 77.

35. Sierra Foxtrot, Schmidt and Pennington appealed the Order Clarifying Scope of Automatic Stay to the United States District Court for the District of Colorado, Case No. 1:15-cv-01986-WYD (the "Appeal").

## THE PROPOSED SETTLEMENT AGREEMENT

36. After discussions, and in an effort to avoid additional costs and delay of further litigation the Trustee, Schmidt, Sierra Foxtrot and Pennington have entered a written Settlement Agreement (the "Agreement") resolving all disputes relating to the following pursuant to the terms and conditions set forth below: the Venue Motion, the Order Clarifying Scope of Automatic Stay, the employment agreements of Schmidt and Pennington, the Notes payable to Sierra Foxtrot and Pennington, and the Mortgage (the "Settled Matters").

37. Schmidt, Sierra Foxtrot and Pennington are referred to collectively hereinafter as "S&P".

38. The following description represents a summary of the terms of the Agreement entered into between the parties and attached hereto as Exhibit 1. Parties should refer to the Agreement for a complete understanding of the terms and conditions of the Agreement. Any inconsistency between the Agreement and the summary provided herein shall be resolved by reference to the terms of the Agreement. The Agreement includes the following terms (numbered paragraphs correspond to the paragraphs in the Agreement):

   1. Bankruptcy Court Approval. The Agreement is subject to, and shall not become effective, until it is approved by written Order of the Bankruptcy Court.

   2. Duty of Cooperation. S&P shall cooperate with the Trustee in (a) his administration of the Bankruptcy Case and (b) his efforts to avoid any and all transfers made by Sun River prior to the commencement of the Bankruptcy Case that the Trustee asserts are avoidable pursuant to applicable federal and state law including, without limitation, the purported 2015 conveyance of the Colfax County Property to Lockhart.

   3. Appeal. Upon execution of the Agreement, Schmidt shall file a motion in the Appeal seeking to hold the Appeal in abeyance pending approval of the Agreement. On or within ten (10) days of entry of an Order approving the Agreement, Schmidt shall dismiss the Appeal.

   4. Venue Motion. Upon execution the Agreement, the Trustee and S&P shall jointly file a motion to vacate the November 18, 2015 hearing on the Venue Motion. On or within ten (10) days of entry of an Order approving the Agreement, Pennington shall withdraw the Venue Motion.

5. <u>Lockhart Adversary Proceeding</u>.  On or before November 30, 2015, the Trustee shall commence an adversary proceeding against Lockhart (the "Adversary Proceeding") seeking to avoid Sun River's purported 2015 transfer of the Colfax County Property to Lockhart (the "Colfax Transfer").  If the Trustee succeeds in avoiding the Colfax Transfer, the Trustee will commence efforts to market and sell the Colfax County Property.  S&P shall cooperate with the Trustee in his efforts to market and sell the Colfax County Property.

6. <u>Foreclosure Action</u>.  In the event the Colfax Transfer is avoided, Pennington shall dismiss the Foreclosure Action.  During the pendency of the Adversary Proceeding, S&P shall not contest or seek relief from the automatic stay to resume prosecution of the Foreclosure Action, unless the Trustee abandons or fails to prosecute the Adversary Proceeding.  In the event the Colfax Transfer is not avoided, or the Trustee abandons or fails to prosecute the Adversary Proceeding, then (a) S&P may continue to prosecute the Foreclosure Action; (b) the mutual release referenced in paragraph 11 herein shall be null and void; and (c) nothing in this agreement or the mutual release will restrict or otherwise limit the rights of the parties in the Foreclosure Action.

7. <u>Allowance of Claims</u>.  Pennington's and Sierra Foxtrot's claims against the Estate arising out of the Notes and the Mortgage shall be allowed as follows:

    (a) Pennington's allowed secured claim (the "Pennington Allowed Secured Claim") against the Estate shall total $396,373 and shall include the following: the principal amount due under the June 4, 2012 promissory note made payable to him in the amount of $298,791.57, together with three (3) years interest at the annual rate of six percent (6%), and attorney's fees incurred by Pennington to collect on the note in the amount of $43,800.00;

    (b) Sierra Foxtrot's allowed secured claim (the "SF Allowed Secured Claim") against the Estate shall total $1,266,000 and shall include the following: unpaid wages, vacation pay and benefits, one-year's severance pay, and 85% of any unpaid bonus;

    (c) Sierra Foxtrot's allowed unsecured claim shall total $1,563,120, and shall include the following: 15% of any unpaid bonus, approximate tax liability, and interest on amounts owed to Schmidt from the date of his promissory note; and,

    (d) All default interest asserted due under the various employment agreements shall be disallowed.

8. <u>Former Officers' Mortgage</u>.  Pursuant to paragraph 8(c) of the Mortgage, S&P elect to compromise any amounts due under the Mortgage as set forth herein.

The indebtedness secured by the Mortgage shall total $2,928,373.00 (the "Allowed Insider Mortgage Claim"), which amount includes the Pennington Allowed Secured Claim, the SF Allowed Secured Claim and $1,266,000 attributable to Wafford's interest (the "Wafford Allowed Secured Claim" and, together with the Pennington Allowed Secured Claim and the SF Allowed Secured Claim, the "Allowed Secured Insider Claims"). The Wafford Allowed Secured Claim is based upon the same calculation as the SF Allowed Secured Claim described in paragraph 7(b), above.

9. <u>Distribution of Colfax County Sale Proceeds</u>.  In the event the Trustee sells the Colfax County Property, the sale proceeds (the "Proceeds") will be distributed at closing in the following order of priority:

    (a) First, in payment of costs directly related to the sale, such as closing costs, broker commissions, and property taxes;

    (b) Second, in payment of the Allowed Insider Mortgage Claim subject to the Carveout (as defined below);

    (c) Third, in payment of other allowed claims secured by liens against the Colfax County Property according to their priorities, provided such claims are not contested by the Trustee or other interested parties;

    (d) Fourth, to the Estate to be distributed in accordance with 11 U.S.C. § 726(a).

10. <u>Carveout</u>.  S&P agree to an 11 U.S.C. § 506(c) carveout (the "Carveout") from the Allowed Insider Mortgage Claim for the payment of (a) all allowed administrative expenses incurred in the Bankruptcy Case; (b) all federal, state and local tax claims of the estate entitled to priority treatment under 11 U.S.C. § 507, including any claims for unpaid employment taxes; and, (c) any amounts owed by Sun River to the Texas Workforce Commission. In the event Schmidt pays any of the expenses subject to the Carveout prior to the sale of the Colfax County Property, the Carveout shall include a dollar for dollar reimbursement to Schmidt for such payments**.**  The Carveout shall be made pro rata from each Allowed Secured Insider Claim.  It is expressly understood, however, that nothing herein shall be construed to reduce the Allowed Secured Insider Claims unless the proceeds from the sale of the Colfax County Property are insufficient to pay the total of the following: (a) the costs directly related to the sale of the Colfax County Property, such as closing costs, broker commissions, and property taxes; (b) all allowed administrative expenses incurred in the Bankruptcy Case; (c) all federal, state and local tax claims of the estate entitled to priority treatment under 11 U.S.C. § 507, including any claims for unpaid employment taxes; (d) the Allowed Secured Insider Claims; and, (e) all other allowed claims to the extent such claims are secured by valid and enforceable

liens against the Colfax County Property. Further, administrative expenses associated with the Adversary Proceeding shall not exceed $200,000 without the written agreement of S&P. The parties estimate that Sun River owes approximately $560,000 to the Texas Workforce Commission on account of unpaid wages and approximately $180,000 to the I.R.S. on account of unpaid payroll taxes. S&P expressly reserve the right to object to the reasonableness of any expenses included in the Carveout.

11. <u>Release</u>. The parties will provide a mutual release with respect to the Settled Matters, but shall reserve all rights with respect to any other issues and disputes that exist or may arise between the parties. Specifically, the Trustee agrees to the allowance of Pennington's and Sierra Foxtrot's secured and unsecured claims against the Estate relating to the Notes and the Mortgage as set forth herein, but does not release any other potential claims or causes of action the Estate may have against or related to S&P. The Trustee also does not release any claims the Estate has or may have against Wafford as he is not a party to the Agreement. Similarly, S&P agree to the treatment of their claims relating to the Notes and the Mortgage as set forth herein, but do not release any other potential claims or causes of action S&P may have against the Trustee, the Estate or Wafford. S&P specifically do not release any potential claims they may have for services provided or company expenses paid that were not included in the employment agreement settlements evidenced by the Notes and Mortgage. In addition, the Trustee agrees not to support any objection filed by any third-party related to any allowed secured or unsecured claim of S&P described herein and it is the Trustee's express intent that such claims be allowed and recognized as valid against the Estate.

## ARGUMENT

39.     "In general, the court must determine whether the settlement is fair and equitable and in the best interests of the estate." *In re Kaiser Steel Corp.*, 105 B.R. 971, 976 (D.Colo. 1989). The factors often considered in this determination are (1) the probability of success on the merits in the litigation; (2) the difficulties, if any, to be encountered in collection of any judgment that might be obtained; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of creditors and the proper deference to their reasonable views in the premises. *Local Service Corp.*, 2011 WL 6330187 at *7-11; *Kaiser Steel*, 105 B.R. at 976-77. Each of the *Kaiser Steel* factors weighs in favor of the proposed Agreement as follows:

      a.     *Probability of Success on the Merits in the Litigation.* The Settled Matters include the Venue Motion in the Bankruptcy Court, the Appeal in the United States District Court, the Foreclosure Proceeding in New Mexico and potential litigation regarding the validity of the Notes and Mortgage. The Trustee asserts that it is very likely that he will prevail on the Venue Motion. Sun River is not operating and the Trustee has secured all of Sun River's records and removed them to Colorado. If venue were changed to Texas, the Estate would incur

8

substantial travel and other attendant costs because the Trustee is based in Colorado. The Trustee also asserts that he is very likely to prevail in the Appeal if for no other reason than it is unclear whether relief is even available given that Schmidt never filed a motion seeking relief from the automatic stay. Even though he is likely to prevail on these two matters, this factor nevertheless weighs in favor of settlement because the Agreement includes no compromise with respect to these matters. The Trustee expects to prevail and the Agreement provides for the withdrawal of the Venue Motion and the Appeal.

Success with respect to the Foreclosure Proceeding and potential challenges to the validity of the Notes and the Mortgage is not so certain. The Notes and Mortgage were challenged in the Derivative Suit and those challenges were ultimately resolved by a settlement that was nationally noticed and approved by a Texas court. The Rooker-Feldman doctrine and principals of *res judicata* may therefore be absolute bars to any challenge to the Notes and Mortgage. Similarly, if the Mortgage cannot be set aside, it is certainly plausible that Pennington would be able to obtain relief from stay at some point during the Bankruptcy Case and, if such relief was obtained, would likely prevail in his efforts in the Foreclosure Proceeding to foreclose the Mortgage. Given the possibility that the Trustee may not prevail with respect to either of these matters, this factor weighs strongly in favor of settlement. Through the Agreement, the Trustee eliminates the prospect of foreclosure and succeeds in reducing the secured claims of the Former Officers by approximately 50%. As the Mortgage is the first lien on the Colfax County Property, this not only benefits unsecured creditors, but junior lienholders such as Nova Capital and the Ballards. Further, the Agreement provides a carveout for administrative expenses and tax claims, thereby increasing the likelihood that the Estate will not be administratively insolvent.

      b. *Difficulties, if any, to be Encountered in Collection.* This factor is inapplicable. Neither party seeks entry of a damage award or the turnover of property in connection with the various Settled Matters.

      c. *Complexity, Expense, Inconvenience and Delay of Litigation.* This factor weighs strongly in favor of settlement. Even though the Trustee is confident that he would prevail on the Venue Motion and the Appeal, each of these contests would require substantial attention by the Trustee and likely result in the expense of substantial monies that would otherwise be available to creditors. The Foreclosure Proceeding, if stay relief were granted, and any challenges to the Notes and Mortgage would likewise result in substantial expense and delay. Further, by resolving these latter potential disputes at this early stage of the case, on terms that substantially benefit creditors and, in the case of the Notes and the Mortgage, prior to even commencing litigation, the Trustee has succeeded in achieving substantial benefits for the Estate with minimal cost and delay.

      d. *Paramount Interests of Creditors and the Proper Deference to their Views.* Under *Kaiser*, this is the most important factor and it also the most important factor in this case. Under the Agreement, the Trustee obtains precisely the relief sought with respect to the Venue Motion and the Appeal: withdrawal and dismissal, respectively. The Settlement requires Pennington and Schmidt to cooperate with the Trustee going forward on all matters in

the Bankruptcy Case including his efforts to recover and sell the Colfax County Property. As stated, the Agreement reduces the first Mortgage against the Colfax County Property by approximately 50%, thereby increasing the likelihood of a distribution to junior lienholders and unsecured creditors. The Agreement includes a release only as to the Settled Matters. Many creditors have expressed concerns regarding the conduct of the Former Offices prior to the filing of the Bankruptcy Case and, with the exception of the issues that were already resolved in the Derivative Suit, namely the validity of the Notes and Mortgage, the Trustee retains all rights against the Former Officers. The Agreement is focused entirely upon pending litigation matters and the Former Officers' interest in the Colfax County Property. The Agreement, if approved, paves the way for the Trustee to recover and liquidate that Property for the benefit of all creditors and achieves that result without resort to expensive and time consuming litigation.

40. All of the applicable *Kaiser Steel* factors weigh strongly in favor of settlement. The Agreement is fair and in the best interests of creditors and should be approved by the Court.

WHEREFORE, the Trustee respectfully requests the Court enter an Order approving the Agreement, and grant such other and further relief as the Court deems just.

Dated this 4th day of November, 2015.

Respectfully submitted,

SENDER WASSERMAN WADSWORTH, P.C.

*/s/ David V. Wadsworth*
David V. Wadsworth, #32066
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
303-296-1999 / 303-296-7600 FAX
dwadsworth@sww-legal.com
Attorneys for the Chapter 7 Trustee