## SETTLEMENT AGREEMENT

Harvey Sender, chapter 7 trustee, Donal R. Schmidt, Jr., Sierra Foxtrot, L.P., and James E. Pennington (the "Parties," and each, a "Party") hereby stipulate and agree as follows:

### Recitals

I.      Case Commencement and Parties

A.      On May 21, 2015 (the "Petition Date"), an involuntary petition seeking chapter 7 relief was filed against Sun River Energy, Inc. ("Sun River") in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") and assigned Case No. 15-16510 MER (the "Bankruptcy Case").

B.      No objections to the involuntary petition were filed and, on June 17, 2015, an Order for Relief and Procedure in Involuntary Case entered in the Bankruptcy Case.

C.      On June 18, 2015, Harvey Sender was appointed trustee of Sun River's bankruptcy estate (the "Estate").

D.      Donal R. Schmidt, Jr. is the former President, Chief Executive Officer and Chairman of the Board of Directors of Sun River.

E.      Sierra Foxtrot, L.P. ("Sierra Foxtrot") is a family partnership. Schmidt asserts that he is the managing member and general partner of Sierra Foxtrot.

F.      James E. Pennington is the former General Counsel and Corporate Secretary of Sun River.

G.      Thimothy S. Wafford is the former Chief Operating Officer of Sun River.

II.     Former Officers' Settlement with Sun River

H.      In 2012, Schmidt, Pennington, and Wafford (collectively referred to hereinafter as the "Former Officers") asserted that Sun River had breached their employment agreements by, among other actions, failing to pay wages, vacation pay, benefits and bonuses allegedly owing thereunder.

I.      The Former Officers and the Sun River Board of Directors negotiated a settlement of the Former Officers' alleged employment claims and the settlement was approved by the Sun River Board of Directors.

J.      The settlement provided for the granting by Sun River of the following: (i) a promissory note payable to Pennington (the "Pennington Note") in the principal amount of $298,791.57; a promissory note payable to Schmidt's designee Sierra Foxtrot in the principal amount

-1-

Exhibit 1

of $2,545,896.10 (the "SF Note"); a promissory note payable to Wafford in the principal amount of $2,545,896.10 (the "Wafford Note" and, together with the Pennington Note and the SF Note, the "Notes"); and a first mortgage (the "Mortgage") to Pennington, Sierra Foxtrot and Wafford against all of Sun River's real and personal property interests in Colfax County, New Mexico (the "Colfax County Property").

K.      It has been represented to the Trustee that the value of the Colfax County Property may exceed $80 million.

L.      The Notes are all dated June 4, 2012, and originally included an interest rate of 4% per annum, a maturity date of December 4, 2012, and a provision for the payment of attorneys fees incurred in collecting any amounts due under the notes.

M.      Sierra Foxtrot and Wafford were each granted a 47.5% interest in the Mortgage. Pennington was granted a 5% interest in the Mortgage.

N.      Paragraph 8(c) of the Mortgage grants each of the mortgagees the individual right to compromise the Mortgage "in such order or manner" as they elect.

O.      The Notes and Mortgage and the Board of Directors' approval of the Notes and Mortgage were challenged in a shareholder derivative lawsuit filed in the 134th Judicial District Court of Dallas County, Texas (the "Derivative Suit"). The Derivative Suit was captioned *Neiger et al. v. Sun River et al.*, Case No DC-12-06318.

P.      On October 3, 2014, the plaintiffs in the Derivative Suit settled all claims against all defendants in the Derivative Suit (the "Derivative Settlement"). Pursuant to court order, the terms of the Derivative Settlement were published nationally to afford interested parties an opportunity to object.

Q.      On December 12, 2014, the court in the Derivative Suit overruled all objections, approved the Derivative Settlement and entered a Final Order and Judgment. The Final Order and Judgment was not appealed.

R.      As relevant to this Settlement Agreement (the "Agreement"), the approved Derivative Settlement included the following terms:

(i)     a release of all shareholder claims against the Former Officers;

(ii)    an extension of the maturity dates of the Pennington Note to December 12, 2016 and the SF Note to December 12, 2017;

(iii)   a requirement that Sun River pay at least 5% of the outstanding balance of the Pennington Note on the 120th day following entry of the Final Order and Judgment, and every 120th day thereafter;

(iv)    a requirement that Sun River pay at least 3% of the outstanding balance of the SF Note on the 120th day following entry of the Final Order and

Judgment, and every 120th day thereafter;

(v)    an increase in the interest rate on the Pennington Note to 6% per annum; and,

(vi)   a provision granting the Former Officers the right to enforce all remedies under the Notes and Mortgage in the event of a payment default by Sun River.

III.   The Receivership and Purported Conveyance to Lockhart

S.    On November 18, 2013, in Case No. 13-11-12339 CV in the 410th Judicial District Court of Montgomery County, Texas, a default judgment entered against Sun River and in favor of CPR Operations, L.P. ("CPR") in the principal amount of $175,130.13 (the "Collection Action").

T.    On September 19, 2014, CPR's Motion for Post-Judgment Receivership filed in the Collection Action was granted and Michael L. Fuqua (the "Receiver") was appointed receiver in the case pursuant to Sections 64.001, 31.002 and 32.002 of the Texas Civil Practice and Remedies Code.  On December 18, 2014, the receivership was modified to clarify that the Receiver was pursuant only to Section 31.002 of the Texas Civil Practices and Remedies Code.

U.    On January 23, 2015, the Receiver filed a motion seeking approval of the sale of the Colfax County Property subject to existing liens to Lockhart Oil & Gas, LLC ("Lockhart") for the sale price of $262,000.00.

V.    The Receiver's motion to sell was approved by the court in the Collection Action on January 28, 2015.

W.    On April 21, 2015, Wafford executed a Mineral Deed on behalf of Sun River to Lockhart, purporting to convey the Colfax County Property to Lockhart.

X.    On May 14, 2015, the Mineral Deed was recorded with the clerk and recorder of Colfax County, New Mexico.

IV.   The Foreclosure Action

Y.    Sun River failed to make the first payment due the Former Officers under the Derivative Settlement when it came due on April 11, 2015.

Z.    Prior to the first payment due date, Pennington commenced an action in the Eighth Judicial District Court, Colfax County, New Mexico (the "Foreclosure Action") seeking to foreclose the Mortgage.

AA.   In his complaint in the Foreclosure Action, Pennington asserted that certain other non-payment defaults had occurred prior to his commencement of the action—including the Receiver's purported sale of the Colfax County Property to Lockhart—thereby giving him the right

to foreclose.

BB.     The Trustee has asserted at all times since his appointment that the Foreclosure Action was stayed by commencement of the Bankruptcy Case.

V.      Contested Matters in the Bankruptcy Case

CC.     On June 22, 2015, Pennington filed a motion seeking dismissal of the Bankruptcy Case or, in the alternative, transfer of venue to the United States Bankruptcy Court for the Northern District of Texas (the "Motion to Dismiss or Transfer Venue"). Schmidt, Sierra Foxtrot and Wafford all joined in the Motion to Dismiss or Transfer Venue.

DD.     The Trustee objected to the Motion to Dismiss or Transfer Venue.

EE.     On August 25, 2015, Sierra Foxtrot filed a "Memorandum in Support of Motion to Clarify Scope of Automatic Stay" in the Bankruptcy Case. In this pleading, Sierra Foxtrot asserted that the automatic stay imposed in the Bankruptcy Case did not extend to the Foreclosure Action in New Mexico.

FF.     On August 25, 2015, the Bankruptcy Court set the contested matter for a two-day evidentiary hearing to commence on November 18, 2015.

GG.     On August 27, 2015, the Bankruptcy Court denied the request for dismissal included in the Motion to Dismiss or Transfer Venue, thereby limiting the contested issues to alternative relief requested of a venue change.

HH.     On August 27, 2015, the Bankruptcy Court also clarified that the automatic stay in the Bankruptcy Case "applies to any action involving the real property described by the parties as the 'Colfax Property' located in Colfax County, New Mexico" including, but not limited to, the Foreclosure Action. *See Order Clarifying Scope of Automatic Stay*, Docket No. 77.

II.     Sierra Foxtrot, Schmidt and Pennington appealed the Order Clarifying Scope of Automatic Stay to the United States District Court for the District of Colorado, Case No. 1:15-cv-01986-WYD (the "Appeal").

JJ.     After discussions, and in an effort to avoid additional costs and delay of further litigation the Trustee, Schmidt, Sierra Foxtrot and Pennington desire to settle all disputes relating to the following pursuant to the terms and conditions set forth below: the Motion to Dismiss or Transfer Venue, the Order Clarifying Scope of Automatic Stay, the employment agreements of Schmidt and Pennington, the Notes payable to Sierra Foxtrot and Pennington, and the Mortgage (the "Settled Matters"). Schmidt, Sierra Foxtrot and Pennington are referred to collectively hereinafter as "S&P".

<u>Terms</u>

NOW THEREFORE, in consideration of the foregoing and the agreements, promises and covenants set forth below, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:

1.      <u>Bankruptcy Court Approval</u>. This Agreement is subject to, and shall not become effective, until it is approved by written Order of the United States Bankruptcy Court for the District of Colorado. Upon execution and delivery of this Agreement, the Trustee's counsel shall prepare and file a motion seeking bankruptcy approval of the agreement. If the Bankruptcy Court fails to enter an Order approving the material terms of this Agreement, the agreement shall be null and void and have no further force and effect.

2.      <u>Duty of Cooperation</u>. S&P shall cooperate with the Trustee in (a) his administration of the Bankruptcy Case and (b) his efforts to avoid any and all transfers made by Sun River prior to the commencement of the Bankruptcy Case that the Trustee asserts are avoidable pursuant to applicable federal and state law including, without limitation, the purported 2015 conveyance of the Colfax County Property to Lockhart.

3.      <u>Appeal</u>. Upon execution of the within Agreement, Schmidt shall file a motion in the Appeal seeking to hold the Appeal in abeyance pending approval of the Agreement. On or within ten (10) days of entry of an Order approving the Agreement, Schmidt shall dismiss the Appeal.

4.      <u>Motion to Dismiss or Transfer Venue</u>. Upon execution the within Agreement, the Trustee and S&P shall jointly file a motion to vacate the November 18, 2015 hearing on the Motion to Dismiss or Transfer Venue. On or within ten (10) days of entry of an Order approving the Agreement, Pennington shall withdraw the Motion to Dismiss or Transfer Venue.

5.      <u>Lockhart Adversary Proceeding</u>. On or before November 30, 2015, the Trustee shall commence an adversary proceeding against Lockhart (the "Adversary Proceeding") seeking to avoid Sun River's purported 2015 transfer of the Colfax County Property to Lockhart (the "Colfax Transfer"). If the Trustee succeeds in avoiding the Colfax Transfer, the Trustee will commence efforts to market and sell the Colfax County Property. S&P shall cooperate with the Trustee in his efforts to market and sell the Colfax County Property.

6.      <u>Foreclosure Action</u>. In the event the Colfax Transfer is avoided, Pennington shall dismiss the Foreclosure Action. During the pendency of the Adversary Proceeding, S&P shall not contest or seek relief from the automatic stay to resume prosecution of the Foreclosure Action, unless the Trustee abandons or fails to prosecute the Adversary Proceeding. In the event the Colfax Transfer is not avoided, or the Trustee abandons or fails to prosecute the Adversary Proceeding, then (a) S&P may continue to prosecute the Foreclosure Action; (b) the mutual release referenced in paragraph 11 herein shall be null and void; and (c) nothing in this agreement or the mutual release

will restrict or otherwise limit the rights of the Parties in the Foreclosure Action.

       7.     <u>Allowance of Claims</u>.  Pennington's and Sierra Foxtrot's claims against the Estate arising out of the Notes and the Mortgage shall be allowed as follows:

       (a)     Pennington's allowed secured claim (the "Pennington Allowed Secured Claim") against the Estate shall total $396,373 and shall include the following: the principal amount due under the June 4, 2012 promissory note made payable to him in the amount of $298,791.57, together with three (3) years interest at the annual rate of six percent (6%), and attorney's fees incurred by Pennington to collect on the note in the amount of $43,800.00;

       (b)     Sierra Foxtrot's allowed secured claim (the "SF Allowed Secured Claim") against the Estate shall total $1,266,000 and shall include the following: unpaid wages, vacation pay and benefits, one-year's severance pay, and 85% of any unpaid bonus;

       (c)     Sierra Foxtrot's allowed unsecured claim shall total $1,563,120, and shall include the following: 15% of any unpaid bonus, approximate tax liability, and interest on amounts owed to Schmidt from the date of his promissory note; and,

       (d)     All default interest asserted due under the various employment agreements shall be disallowed.

       8.     <u>Former Officers' Mortgage</u>.  Pursuant to paragraph 8(c) of the Mortgage, S&P elect to compromise any amounts due under the Mortgage as set forth herein.  The indebtedness secured by the Mortgage shall total $2,928,373.00 (the "Allowed Insider Mortgage Claim"), which amount includes the Pennington Allowed Secured Claim, the SF Allowed Secured Claim and $1,266,000 attributable to Wafford's interest (the "Wafford Allowed Secured Claim" and, together with the Pennington Allowed Secured Claim and the SF Allowed Secured Claim, the "Allowed Secured Insider Claims").  The Wafford Allowed Secured Claim is based upon the same calculation as the SF Allowed Secured Claim described in paragraph 7(b), above.

       9.     <u>Distribution of Colfax County Sale Proceeds</u>.  In the event the Trustee sells the Colfax County Property, the sale proceeds (the "Proceeds") will be distributed at closing in the following order of priority:

       (a)     First, in payment of costs directly related to the sale, such as closing costs, broker commissions, and property taxes;

       (b)     Second, in payment of the Allowed Insider Mortgage Claim subject to the Carveout (as defined below);

       (c)     Third, in payment of other allowed claims secured by liens against the Colfax County Property according to their priorities, provided such claims are not contested

by the Trustee or other interested parties;

(d)     Fourth, to the Estate to be distributed in accordance with 11 U.S.C. § 726(a).

10.     Carveout.  S&P agree to an 11 U.S.C. § 506(c) carveout (the "Carveout") from the Allowed Insider Mortgage Claim for the payment of (a) all allowed administrative expenses incurred in the Bankruptcy Case; (b) all federal, state and local tax claims of the estate entitled to priority treatment under 11 U.S.C. § 507, including any claims for unpaid employment taxes; and, (c) any amounts owed by Sun River to the Texas Workforce Commission.  In the event Schmidt pays any of the expenses subject to the Carveout prior to the sale of the Colfax County Property, the Carveout shall include a dollar for dollar reimbursement to Schmidt for such payments.  The Carveout shall be made pro rata from each Allowed Secured Insider Claim.  It is expressly understood, however, that nothing herein shall be construed to reduce the Allowed Secured Insider Claims unless the proceeds from the sale of the Colfax County Property are insufficient to pay the total of the following: (a) the costs directly related to the sale of the Colfax County Property, such as closing costs, broker commissions, and property taxes; (b) all allowed administrative expenses incurred in the Bankruptcy Case; (c) all federal, state and local tax claims of the estate entitled to priority treatment under 11 U.S.C. § 507, including any claims for unpaid employment taxes; (d) the Allowed Secured Insider Claims; and, (e) all other allowed claims to the extent such claims are secured by valid and enforceable liens against the Colfax County Property.  Further, administrative expenses associated with the Adversary Proceeding shall not exceed $200,000 without the written agreement of S&P.  The Parties estimate that Sun River owes approximately $560,000 to the Texas Workforce Commission on account of unpaid wages and approximately $180,000 to the I.R.S. on account of unpaid payroll taxes.  S&P expressly reserve the right to object to the reasonableness of any expenses included in the Carveout.

11.     Release.  The Parties will provide a mutual release with respect to the Settled Matters, but shall reserve all rights with respect to any other issues and disputes that exist or may arise between the Parties.  Specifically, the Trustee agrees to the allowance of Pennington's and Sierra Foxtrot's secured and unsecured claims against the Estate relating to the Notes and the Mortgage as set forth herein, but does not release any other potential claims or causes of action the Estate may have against or related to S&P.  The Trustee also does not release any claims the Estate has or may have against Wafford as he is not a Party to the Agreement.  Similarly, S&P agree to the treatment of their claims relating to the Notes and the Mortgage as set forth herein, but do not release any other potential claims or causes of action S&P may have against the Trustee, the Estate or Wafford.  S&P specifically do not release any potential claims they may have for services provided or company expenses paid that were not included in the employment agreement settlements evidenced by the Notes and Mortgage.  In addition, the Trustee agrees not to support any objection filed by any third-party related to any allowed secured or unsecured claim of S&P described herein and it is the Trustee's express intent that such claims be allowed and recognized as valid against the Estate.

12.     Authorization. Each Party and signatory to this Agreement represents and warrants to each other Party hereto that such Party or signatory has full power, authority and

-7-

legal right and has obtained all approvals and consents necessary, to execute, deliver and perform all actions required under this Agreement.

13.      Enforcement of Agreement. In addition to all other available remedies, this Agreement shall be specifically enforceable by any Party, and in the event of the failure of any Party or Parties to comply with the terms of this Agreement, equitable and/or legal relief may be sought by the Party to the defaulting or breaching Party. In the event of litigation to enforce the provisions of this Agreement, the prevailing Party or Parties shall recover reasonable attorneys' fees and costs from the non-prevailing Party or Parties.

14.      Voluntary Agreement. The Parties hereby affirm and acknowledge that they have read and reviewed the Agreement, and that they fully understand and appreciate the meaning of each of its terms, and that it is a voluntary, full and final compromise of the claims and actions referred to in paragraph 11, above.

15.      Further Acts. Each Party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, instruments and documents, as the other Party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

16.      Modification. This Agreement may not be modified, amended, altered, or supplemented except upon the execution and delivery of a written agreement executed by the Parties.

17.      Governing Law. This Agreement shall be governed by and construed in accordance with the law and rules applicable in the United States Bankruptcy Court for the District of Colorado. Where state or substantive law other than the Bankruptcy Code controls, this Agreement shall be governed by the substantive law of the State of Colorado, without regard to its choice of law rules.

18.      Forum. Any controversies regarding this Agreement shall be resolved in the United States Bankruptcy Court for the District of Colorado. Any action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the United States Bankruptcy Court or the United States District Court for the District of Colorado, which shall retain jurisdiction over the subject matter and Parties for this purpose.

19.      Binding Nature. This Agreement shall inure to the benefit of, and be binding upon, the respective agents, predecessors, successors, and assigns of the Parties, the creditors and the estate.

20.      Severability. If any provision of this Agreement is declared illegal, invalid or unenforceable by a court having proper jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared illegal, invalid or unenforceable by order of such court,

provided, however, that in the event that the terms and conditions of this Agreement are materially altered, the Parties will, in good faith, renegotiate the terms and conditions of this Agreement to reasonably replace such illegal, invalid or unenforceable provisions in light of the intent of this Agreement

21.     Counterparts. This Agreement may be executed in counterparts with the same force and effect as though all signatures appeared on one original document.  Facsimile or electronically scanned signatures are binding and enforceable as if they were originals.

22.     No Admission. This Agreement is being entered into solely as a settlement of claims, and does not represent an admission by the Parties of any liability with respect to the claims and/or defenses being resolved by this Agreement.

WHEREFORE, the Parties have caused this Agreement to be executed as of the date first written below.

_____

Harvey Sender, Chapter 7 Trustee

10-28-15

_____

Donal R. Schmidt, Jr.

_____

James E. Pennington

SIERRA FOXTROT, L.P.

_____

By: _____
Its: _____

provided, however, that in the event that the terms and conditions of this Agreement are materially altered, the Parties will, in good faith, renegotiate the terms and conditions of this Agreement to reasonably replace such illegal, invalid or unenforceable provisions in light of the intent of this Agreement

21.    Counterparts. This Agreement may be executed in counterparts with the same force and effect as though all signatures appeared on one original document.  Facsimile or electronically scanned signatures are binding and enforceable as if they were originals.

22.    No Admission. This Agreement is being entered into solely as a settlement of claims, and does not represent an admission by the Parties of any liability with respect to the claims and/or defenses being resolved by this Agreement.

WHEREFORE, the Parties have caused this Agreement to be executed as of the date first written below.


_____
Harvey Sender, Chapter 7 Trustee


_____
Donal R. Schmidt, Jr.


_____
James E. Pennington


SIERRA FOXTROT, L.P.


_____
By: Donal R. Schmidt, Jr.
Its: Managing member of its G.P.
     Sierra Foxtrot Genpar, LLC

-9-

provided, however, that in the event that the terms and conditions of this Agreement are materially altered, the Parties will, in good faith, renegotiate the terms and conditions of this Agreement to reasonably replace such illegal, invalid or unenforceable provisions in light of the intent of this Agreement

21. Counterparts. This Agreement may be executed in counterparts with the same force and effect as though all signatures appeared on one original document. Facsimile or electronically scanned signatures are binding and enforceable as if they were originals.

22. No Admission. This Agreement is being entered into solely as a settlement of claims, and does not represent an admission by the Parties of any liability with respect to the claims and/or defenses being resolved by this Agreement.

WHEREFORE, the Parties have caused this Agreement to be executed as of the date first written below.


_____

Harvey Sender, Chapter 7 Trustee



_____

Donal R. Schmidt, Jr.

_____

James E. Pennington

SIERRA FOXTROT, L.P.


By: _____
Its: _____

-9-