## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| SUN RIVER ENERGY, INC., ) | Case No.: 15-15610-MER |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |

**NOVA LEASING'S BRIEF IN SUPPORT OF ITS OBJECTION [#127] TO TRUSTEE'S MOTION [#115] TO APPROVE SETTLEMENT AGREEMENT BETWEEN TRUSTEE, DONAL R. SCHMIDT, SIERRA FOXTROT, L.P., AND JAMES E. PENNINGTON**

Nova Leasing, LLC ("Nova"), by and through its attorneys, Allen & Vellone, P.C. and Volant Law, LLC, submits its brief in support of its Objection [Dkt. 127] to the Trustee's Motion to Approve Settlement Agreement Between Trustee, Donal R. Schmidt, Sierra Foxtrot, L.P., and James E. Pennington (the "Settlement") [Dkt. 115].

## INTRODUCTION

Debtor's schedules, filed by the Insiders, reflect that Debtor has assets of approximately $3.7 million and liabilities of approximately $11.7 million. Its creditors include judgment creditors, mechanics lienors, professionals, vendors, utilities, and local governments. The Trustee has proposed a settlement that would give the Insiders a first-priority secured $3.0 million claim based on a fraudulently conveyed security interest. Nova has objected to this proposed settlement as unfair, inequitable, and not in the best interests of the Estate. Rather than offering the Insiders' a generous settlement that gives them priority over all other creditors and, potentially, the lion's share of any distribution, the Trustee should instead seek to disallow their claim as a fraudulent conveyance.

As detailed in Nova's Objection [# 127], and incorporated herein by reference, in June 2012 the Insiders were owed—at most—$850,000 in compensation.  Yet, the Insiders caused Debtor to execute a promissory note and mortgage in their favor in the combined principal amount of approximately $5.5 million.  This transaction left Debtor with insufficient assets to pay its other creditors.  The Trustee can and should object to the Insiders' claim on the basis that the Insiders caused the Debtor to grant them a security interest on account of antecedent debt based on an employment agreement and in exchange for no new value at a time the company was insolvent, and all in an effort to obtain a security interest in preference to known creditors.

The Insiders now ask this Court to reject Nova's Objection out of hand, citing a prior settlement of a shareholder derivative suit.  The order approving the settlement contained no factual findings about the fraudulent conveyance.  (App. Vol. III at 153-56).  It did, however, operate as a release of claims against the Insiders by Debtor's shareholders "**solely in his, her or its capacity as a Sun River shareholder**[.]"  (*Id*. at 154, ¶¶ 9-11) (emphasis added).  The Insiders contend that this shareholder settlement somehow immunizes them from a fraudulent conveyance claim by the Trustee brought on behalf of Debtor's vast array of creditors.  As a matter of law, the Insiders are incorrect.  Neither *Rooker-Feldman* nor claim preclusion bar a § 544 claim by the Trustee.

## STANDARD OF REVIEW

To approve the Trustee's proposed settlement, this Court must find that the settlement is "fair and equitable and in the best interests of the estate." *In re Bugaighis*, 2004 WL 3190352, at *5 (Bankr. D. Colo. Nov. 5, 2004).  In making this determination, this Court considers the following factors: "1) the probable success of the litigation on the merits; 2) any potential

difficulty in collection of a judgment; 3) the complexity and expense of the litigation; and 4) the interests of creditors in deference to their reasonable views." *Id.* (citing *Kaiser v. Steel Corp. v. Frates*, 105 B.R. 971, 976-77 (D. Colo. 1989)).

Nova has objected to the settlement. The Insiders have argued that this Court may dispose of Nova's Objection based on certain legal principles. It appears that the Insiders' legal argument is directed to the first prong of the analysis, *viz.*, that as a matter of law, the Trustee is unlikely to succeed on a § 544 claim because *Rooker-Feldman* deprives this Court of subject matter jurisdiction or because claim preclusion bars relitigation of the § 544 claim.

The Insiders' argument is best construed as a motion for summary judgment reviewable pursuant to Rule 56. Under Rule 56, summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). In applying this standard, courts draw all reasonable inferences from the factual record most favorably to the nonmovant. *Adler*, 144 F.3d at 670 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986) and *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 781 (10th Cir. 1995)).

## ARGUMENT

### I. *Rooker-Feldman* Does Not Bar a § 544 Claim by the Trustee

"Section 544 of the Code permits the trustee, in his capacity as a hypothetical creditor, to bring suit on behalf of creditors." *In re Dow*, 132 B.R. 853, 861 (Bankr. S.D. Ohio 1991). Nova contends that the Trustee should exercise his strong-arm powers to seek disallowance of the

Insiders' claim. The Insiders counter that *Rooker-Feldman* prevents the Trustee from doing so. They are wrong.

*Rooker-Feldman* does not arise from any constitutional provision. Rather, it reflects a negative inference derivable from 28 U.S.C. § 1257(a), which confers exclusive jurisdiction on the U.S. Supreme Court for direct review of state court judgments. As a consequence of § 1257(a), the Supreme Court has instructed lower federal courts to decline requests to expressly overturn state court judgments. That is the *Rooker-Feldman* doctrine. Prior to 2005, the *Rooker-Feldman* doctrine had been applied only twice by the Supreme Court, in the eponymous *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

The Court took the occasion in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) to clarify the scope of *Rooker-Feldman* because "the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases[.]" *Id*. at 283. The contours of the doctrine, as originally announced, were confined to the following: "Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.,* properly dismissed for want of subject-matter jurisdiction." *Id*. at 283-84.

The Court in *Exxon* clarified that the *Rooker-Feldman* doctrine was limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284.

4

In *Exxon*, SABIC first sued Exxon in state court seeking declaratory judgment that certain royalties were proper; Exxon sued SABIC two weeks later in federal court alleging that the royalties were improper. *Id*. at 289. The state court case went to judgment first, at which point the federal appeals court—hearing an interlocutory appeal of the denial of a motion dismiss—held that *Rooker-Feldman* precluded the federal case from proceeding, because the two cases contained mirror-image claims. The Supreme Court reversed, holding that *Rooker-Feldman* applies only where a party asks a federal court "to overturn an injurious state-court judgment." *Id*. at 292.

The Court held expressly that *Rooker-Feldman* does **not** "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at 293. If a plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction[.]" *Id*.

As *Exxon* made clear, the *Rooker-Feldman* doctrine applies in the very limited circumstance where (1) a state court loser (2) complains of injuries caused by a state court judgment and (3) asks a federal court to review and reject the injurious state court judgment. *See Lance v. Dennis*, 126 S. Ct. 1198, 1201 (2006) ("*Rooker–Feldman*, we explained, is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") (quotation omitted). Here, (1) the Trustee is not a state-court loser, (2) a § 544 action would not be predicated on injuries caused by state-court

judgments, and (3) the § 544 action would not invite this Court to review or reject the state court judgment.

It is clear from the Supreme Court and Tenth Circuit's post-*Exxon* jurisprudence that *Rooker-Feldman* should be applied narrowly, and only to cases where the party against whom the doctrine is invoked (here the Trustee) was personally a party to the prior litigation and is literally seeking a federal court order expressly overturning a state court judgment.

*Rooker-Feldman* does not bar a suit by the Trustee because he was not a party to the shareholder derivative suit. *Dennis*, 126 S. Ct. at 1201 ("we have held *Rooker–Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding"); *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234 (10th Cir. 2006) ("This Court has repeatedly held that the *Rooker–Feldman* doctrine should not be applied against non-parties to the state-court judgment.") (quotation omitted).

The *Rooker-Feldman* doctrine is enforceable only against the actual party to a prior proceeding—not even to one in privity with a prior party. The Supreme Court made this clear in *Lance v. Davis*. The district court, in error, applied Tenth Circuit precedent and held that *Rooker-Feldman* applied to "parties who were in privity with a party to the earlier state-court action[.]" *Davis*, 126 S. Ct. at 1202. The Supreme Court reversed, holding:

> The District Court erroneously conflated preclusion law with *Rooker–Feldman*. Whatever the impact of privity principles on preclusion rules, *Rooker–Feldman* is not simply preclusion by another name. The doctrine applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.

*Id*. (citation omitted).

The Trustee was not a party to the shareholder derivative suit. *See, e.g.*, *In re Eight Bulls, LP*, 439 B.R. 370, 377 (Bankr. D.N.J. 2010) *aff'd sub nom. Sheehan v. Dobin*, No. CIV.A. 10-6288 FLW, 2011 WL 3625586 (D.N.J. Aug. 15, 2011) (Trustee "cannot be characterized as a state-court loser complaining of injuries caused by the cited judgment"). Indeed, he is not even in privity with those shareholders, as he would bring his § 544 claim, not on behalf of Sun River's shareholders, but rather its creditors. *Rooker-Feldman* is inapplicable to the Trustee.

Not only is *Rooker-Feldman* inapplicable because the Trustee was a stranger to the prior proceeding, it is inapplicable because a § 544 claim would not seek to overturn a state court judgment. The only claims barred by *Rooker-Feldman* "are those complaining of injuries caused by state-court judgments. In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (quotation omitted). A § 544 claim would not feature as an element that the state court erred by approving the shareholder derivative settlement. The Trustee would not ask this Court to determine—contrary to the state court's findings—that the derivative settlement was unfair to the shareholders, lacked sufficient notice to the shareholders, or was induced by fraud. This Court could find in favor of the Trustee on a § 544 claim without considering such issues.

*Rooker-Feldman* does not prohibit a federal court from disagreeing with a prior state court judgment; rather, it prohibits a federal court from effectively overturning a prior state court judgment:

> Appellate review—the type of judicial action barred by *Rooker–Feldman*—consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the

7

> prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.

*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1143 (10th Cir. 2006) ; *see also Davis*, 126 S. Ct. at 1202 ("The doctrine applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.").

A § 544 claim would not require this Court to pass judgment on the state court's order. Moreover, the injury redressable by a § 544 claim is that caused by the fraudulent conveyance, not by the state court judgment itself. *Rooker-Feldman* applies only where a party seeks redress for injuries caused by the state court judgment:

> [W]e must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. . . . In other words, we approach the question by asking whether the state-court judgment *caused,* actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress.* If it did, *Rooker–Feldman* deprives the federal court of jurisdiction.

*Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002) (emphasis in original) (quotation omitted).

The Trustee was not a party to the shareholder derivative suit, a § 544 claim does not seek redress for injuries caused by the state court judgment, and such claim does not require this Court to sit in direct appeal of the state court. *Rooker-Feldman* is wholly inapplicable to any § 544 claim by the Trustee.

**II.    *Res Judicata* Does Not Preclude a § 544 Claim**

The Insiders raise the specter of claim preclusion. It is unclear whether they contend that claim preclusion bars the Trustee's § 544 claim or that it precludes Nova from objecting to the Trustee's settlement. Neither argument is well taken, but Nova will address both.

8

Preliminarily, Nova must address the choice-of-law issue to which the Insiders allude. With little analysis, they assert that Texas or New Mexico supply the law of decision. Not so. Unless defendants (here the Insiders) establish that there is an outcome-determinative conflict between the law of the forum state and that of the defendants' favored forum, a district court will apply the forum's law. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996) ("Unless such a conflict exists, courts do not make choice of law decisions."). Here, the Insiders have conceded that there is no outcome-determinative conflict between Colorado's law and that of Texas or New Mexico. (Insider's Br. at 13-14) ("the law on issue or claim preclusion is essentially the same in Texas and in New Mexico as it is in Colorado"). Therefore, they have not overcome the presumption that Colorado law applies. *See, e.g.*, *Iskowitz v. Cessna Aircraft Co.*, No. 07-CV-00968-REB-CBS, 2010 WL 3075476, *3 (D. Colo. Aug. 5, 2010) ("In sum, the Restatement analysis, the analysis applicable under Colorado law, begins with the presumption that Colorado law will govern. If there is an outcome determinative conflict between Colorado law and another body of law that arguably is applicable, then I must . . . determine what law is applicable.").

Claim preclusion applies only to one who was a party, or in privity with a party, to a prior action. *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) ("there must exist . . . identity or privity between parties to the actions"). Standing in the shoes of all of Sun River's creditors, and empowered to bring a § 544 claim on behalf of all or any one of them, the Trustee is not precluded by the shareholder derivative suit from bringing a fraudulent conveyance claim against the Insiders. Many, if not most, of Sun River's creditors were not parties or privy to the shareholder derivative suit. These include mechanics lienors,

9

county governments, former employees, attorneys, judgment creditors, vendors, utilities, and various service providers. [# 58-1]. The Trustee standing in their shoes is not barred by claim preclusion from prosecuting a fraudulent conveyance claim on their behalf.

A significant body of case law supports this conclusion. In *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 705 (6th Cir.1999) (quotations and citations omitted), the Sixth Circuit opined:

> A bankruptcy trustee is the representative of all creditors of the bankruptcy estate . . . Because the trustee is invested with extraordinary rights as a general representative of creditors, he is not bound, either on res judicata or judicial collateral estoppel [grounds] by the prior state proceedings. . . . Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein. Thus they cannot be bound by the dismissal of the action."

Unless all creditors on behalf of whom the Trustee could bring a § 544 claim were parties to a prior proceeding, the Trustee is not claim precluded. *See In re Marlar*, 267 F.3d 749, 754 (8th Cir. 2001) ("the trustee represents all unsecured creditors of the bankruptcy estate. The plain language of § 544(b)(1) permits the trustee to avoid the transfer if *any* unsecured creditor has the right to do so under state law. Thus, the fact that the transfer is not voidable by creditor Davis does not bar the trustee from relying on the rights of other unsecured creditors.") (emphasis in original) (citation omitted).

Helpful analysis is provided by *In re Cowden*, 337 B.R. 512 (Bankr. W.D. Pa. 2006). There, the Chapter 7 trustee filed an adversary proceeding to avoid several prepetition transfers. The defendants had previously settled a similar claim with some of the creditors (the "Co-Administrators") and the bankruptcy court had approved the settlement agreement. The defendants, therefore, argued that the trustee was claim precluded from filing an adversary

directed to the same transfers that were subject to the prior approved settlement. The court rejected the defendants' argument:

> The Trustee was neither a party, nor in privity with a party, to the Co–Administrators' exemption objection because (i) the Trustee represents not only the interests of the Co–Administrators—to the extent that they remain an unsecured creditor in the instant bankruptcy—and the Debtor herself but also the interests of the rest of the Debtor's present creditor body, and (ii) the rest of such creditor body was neither a party, nor in privity with a party, to the Co–Administrators' exemption objection.

*Id.* at 531.

It cannot be disputed that many of Sun River's creditors were not parties, and not in privity with parties, to the shareholder derivative suit. Consequently, the Trustee may bring a § 544 claim against the Insiders.

### III. *Res Judicata* Does Not Bar Nova from Objecting to the Settlement Proposal

Although unclear, the Insiders may be arguing that Nova is claim precluded from objecting to the Trustee's settlement proposal. This, too, is incorrect.

The shareholder derivative settlement applies to Nova as a shareholder. The agreement applies to "each Sun River shareholder (solely in their capacity as a Sun River shareholder)[.]" (App. Vol. III at 154, ¶¶ 9-11). The intent of the parties in executing the settlement, and that of the court in approving it, is that it would bind the shareholders "solely in their capacity as a Sun River shareholder" and not in any other capacity. Nova does not object to the Trustee's proposed settlement in its capacity as a shareholder but rather in its capacity as a secured creditor. Indeed, it is the Insiders who should be judicially estopped from first causing the Texas court to enter an order binding the shareholders solely in their shareholder capacity and then arguing here that *res judicata* precludes Nova from taking adverse action in any capacity.

11

Nor do the principles of claim preclusion support the Insiders' position. For *res judicata* to apply, there must be an identity of "capacity in the persons for which or against whom the claim is made." *Weibert v. Rothe Bros.*, 618 P.2d 1367, 1372 (Colo. 1980); *see also Westminster v. Church,* 445 P.2d 52, 55 (1968) (same). Here, there is no identity of capacity—the shareholder derivative settlement applies to Nova solely in its capacity as a shareholder and it objects to the Trustee's settlement proposal in its capacity as a secured creditor.

The distinction in capacities makes sense in light of the unique role of shareholder derivative suits. A shareholder derivative suit seeks to redress an injury to the corporation, rather than to any given shareholder. *River Mgmt. Corp. v. Lodge Properties Inc.*, 829 P.2d 398, 403 (Colo. App. 1991) ("In general, claims of waste and mismanagement of corporate assets are claims which allege injury to the corporation and, thus, can only be raised by the corporation itself or by the stockholders in a derivative suit."); . Consequently, any direct injury to Nova was expressly not addressed in the shareholder derivative suit. *See Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990) ("it is the corporation that has suffered direct injury, and any damage resulting to the stockholder is merely indirect"); *Richardson v. Newman*, 439 S.W.3d 538, 542 (Tex. App. 2014) (shareholder "who brings a derivative suit does not rely on her own claims but steps into the shoes of the corporation and asserts the corporation's claims for damages against the directors").

This provides yet another reason that the shareholder derivative suit does not preclude Nova's Objection: there is no identity of claims between the two proceedings. "The same claim or cause of action requirement **is bounded by the injury for which relief is demanded**, and not by the legal theory on which the person asserting the claim relies." *Farmers High Line Canal &*

*Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo. 1999). The shareholder derivative suit demanded relief for injuries to the corporation. Nova's Objection seeks to prevent injury to the corporation's creditors.

Additionally, the Insiders have cited no case for the proposition that prior state court litigation may preclude a creditor from objecting to a Chapter 7 trustee's motion. Undersigned counsel can confirm that, despite exhaustive research by his talented associate, no such case has been found. Also, perhaps axiomatically, claim preclusion bars relitigation of a "claim." *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of **the very same claim**, whether or not **relitigation of the claim** raises the same issues as the earlier suit") (emphasis added); *People in Interest of E.E.A. v. J.M.*, 854 P.2d 1346 (Colo. App. 1992) ("under the doctrine of claim preclusion, a judgment on the merits bars a second lawsuit based on the **same cause of action**") (emphasis added). An objection to a motion is not a "claim" or a "cause of action."

### IV.  Judicial Estoppel Does Not Bar Nova's Equitable Subordination Claim

In its Objection, Nova indicated that it intended to file an adversary proceeding to equitably subordinate the Insiders' claim. That is an independent reason why Nova objects to the Trustee's settlement: that it agrees to give the Insiders' a first-position security interest, when, in fact, their claim should be subordinated to all other creditors.

The Insiders argue that Nova should be judicially estopped from seeking equitable subordination because Nova accepted a security interest in the Colfax County property knowing that the Insiders had already recorded their interest. Five elements guide a court's decision

whether to apply judicial estoppel.  First, the same party has taken two different positions. *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997).  Second, the positions are taken in the same or related proceedings.  *Id.*  Third, the party taking the positions was successful in maintaining the first position and received some benefit in the first proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the "perception that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. at 750 (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982); *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997).  Fourth, the inconsistency is part of an intentional effort to mislead the court.  *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997); *New Hampshire v. Maine*, 532 U.S. at 751 (if a party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party it should be estopped) (citing cases). This requirement is met when the initial position taken by the party was not as a result of a good-faith mistake or inadvertence.  *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997) (citing *Lyons Sav. & Loan Ass'n v. Dire's Lock and Key Co.*, 885 P.2d 345, 349 (Colo. App. 1994)).  Fifth, the two positions are totally inconsistent – that is, the truth of one position necessarily precludes the truth of the other.  *Id.*

      The Insiders have not articulated the two diametrically opposed positions that Nova has allegedly taken before two different tribunals.  Nor have they argued that Nova has intentionally sought to mislead either the state court or this Court.  Nova never acquiesced to the Insiders' first-position security interest.  At most, Nova acknowledged that the Insiders had filed liens on the Colfax County property.  Nova never stipulated to the extent, validity, or priority of those liens.

14

In any event, many of the facts underlying the equitable subordination claim arose after Nova's settlement. After both Nova's settlement and after settling the shareholder derivative suit, the Insiders, according to the Trustee, "(a) elected not to defend a receivership action brought to enforce an approximately $250,000 debt against the company; (b) elected not to oppose a sale of the Property for a price that equaled approximately .25% of the Property's supposed value; and, (c) appeared in the action for the sole purpose of seeking to strike a creditor's objection to the sale. In other words, the Debtor, under the control of Wafford and Schmidt, consented by its silence to the disposition of the Property in a manner that inured entirely to the benefit of the Insiders and to the complete detriment of the Debtor's creditors and shareholders." [Dkt. 40, ¶ 22]. Given that this conduct transpired after the relevant settlements, no doctrine precludes Nova from pursuing an equitable subordination claim. The Insiders contend that the above-quoted allegations "are not supported by any evidence whatsoever." (Br. at 2). That assertion, however, does not justify summary judgment. To the contrary, it reflects an evidentiary dispute that should be litigated and tried.

## CONCLUSION

The question currently pending is whether the undisputed material facts entitle the Trustee to judgment as a matter of law on Nova's Objection. They do not. This contested matter should proceed to discovery and an evidentiary hearing.

DATED this 29th day of February, 2016.

        Respectfully submitted,

        ALLEN & VELLONE, P.C.

        *s/ Jordan Factor*
        Jordan Factor, #38126
        Nicole Detweiler, IL Bar #6308875
        ALLEN & VELLONE, P.C.
        1600 Stout Street, Ste. 1100
        Denver, Colorado  80202
        303-534-4499
        JFactor@allen-vellone.com
        NDetweiler@allen-vellone.com
        ATTORNEY FOR NOVA LEASING, LLC

        Tobin D. Kern
        Volant Law LLC
        333 W. Hampden Ave., Suite 1000
        Englewood, CO 80110
        CO-COUNSEL FOR NOVA LEASING, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of February, 2016, I electronically filed the foregoing NOVA LEASING'S BRIEF IN SUPPORT OF ITS OBJECTION [#127] TO TRUSTEE'S MOTION [#115] TO APPROVE SETTLEMENT AGREEMENT BETWEEN TRUSTEE, DONAL R. SCHMIDT, SIERRA FOXTROT, L.P., AND JAMES E. PENNINGTON with the Clerk of Court and a copy will be served by U.S. Mail, first class postage prepaid, to the following:

David Wadsworth
1660 Lincoln St.
Ste. 2200
Denver, CO 80264

James E. Pennington
LAW OFFICES OF JAMES E. PENNINGTON, P.C.
900 Jackson Street, Suite 440
Dallas, Texas 75202

Donal R. Schmidt, Jr.
The Law Firm of Donal R. Schmidt, Jr..
5646 Milton St., Suite 130
Dallas, Texas 75206

Tobin D. Kern
Volant Law LLC
333 W. Hampden Ave., Suite 1000
Englewood, CO 80110

M. Gabriel McFarland, LLC
Cyd Hunt
Evans & McFarland, LLC
Golden, CO 80401

Christian C. Onsager
Onsager Guyerson Fletcher Johnson, LLC
1801 Broadway, Suite 900
Denver, CO 80202

Torben Welch
1430 Wynkoop St., Ste. 400
Denver, CO 80202

Dave Giddens
10400 Academy NE, Suite 350
Albuquerque, NM 87111

*s/ Juanita E. West*