# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*") is made and entered into this 13th day of May, 2022 (the "Effective Date") by and between J. Bradford Smith or his Permitted Assignee (as defined in Section 17(f)) ("*Purchaser*") and Harvey Sender, in his capacity as Chapter 7 Trustee of the bankruptcy estate of Sun River Energy, Inc. (the "*Debtor*").

## BACKGROUND

A.  The Debtor's bankruptcy case, Case No. 15-15610 MER (the "*Bankruptcy Case*") was commenced by the filing of an involuntary Chapter 7 petition by three creditors on May 21, 2015 with the United States Bankruptcy Court for the District of Colorado (the "*Bankruptcy Court*"). No response was filed to the petition and summons, and the Order for Relief was entered June 17, 2015. Harvey Sender was appointed chapter 7 Trustee (the "*Trustee*") of the Debtor's estate in the Bankruptcy Case on June 25, 2015.

B.  The Trustee desires to sell, and Purchaser desires to purchase or cause his Permitted Assignee (as defined below) to purchase, all of the Debtor's mineral rights (mineral interests), timber rights and any associated production royalties or similar rights of the Debtor on the terms and conditions set forth in this Agreement. Such mineral rights vary by deed but are known to include oil and gas, coal, and hard rock minerals. Such mineral rights located in and about Colfax County, New Mexico are known to include 158,960 gross acres (132,417 net acres) and approximately 2,148 gross acres (1,610 net acres) of oil and gas mineral leases located in Tom Green County, Texas. The approximate total of known mineral and timber interests is 193,000, subject to a final adjustment as agreed by the Trustee and the Purchaser, and as approved by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement and intending to be legally bound, the parties agree as follows:

1.  **Assets to be Sold.**  Upon the terms and subject to the conditions set forth in this Agreement and except as set forth in Section 2 of this Agreement, at the Closing (as defined in Section 8 of this Agreement), the Trustee, on behalf of the Debtor's bankruptcy estate, shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase, acquire and accept from the Trustee and the Debtor's bankruptcy estate, all of the Debtor's right, title and interest in and to all of the properties, assets and property rights (collectively, the "*Purchased Assets*"), tangible or intangible, that are used in or useful to the operation of the business conducted by the Debtor in New Mexico and Texas (the "*Operations*"), including but not limited to:

(a)  all of the Debtor's mineral rights (mineral interests), timber rights and any associated production royalties or similar rights of the Debtor on the terms and conditions set forth in this Agreement. Such mineral rights vary by deed but are known to include oil and gas, coal, and hard rock minerals. Such mineral rights located in and about Colfax County, New Mexico consist of 158,960 gross acres (132,417 net acres) and approximately 2,148 gross acres (1,610 net

acres) of oil and gas mineral leases located in Tom Green County, Texas, all as more particularly described on Exhibit A to this Agreement. The approximate total of all mineral and timber interests is 193,000, subject to a final adjustment as agreed by the Trustee and the Purchaser, and as approved by the Bankruptcy Court;

(b) all geological reports, maps, studies, notations, and reserve reports of the Debtor, including those in the Trustee's possession or control and identified on Schedule 1(b) to this Agreement (the "**Personal Property**");

(c) to the extent transferable, and subject to any required consents, all permits, licenses, approvals, authorizations, consents, exemptions, waivers and variances of the Debtor granted by any government, governmental or regulatory body, political subdivision, or any agency or instrumentality thereof, or any court that has, in each case, jurisdiction over the Operations in New Mexico and Texas (the "**Permits and Authorizations**");

(d) except as provided in Section 2(b) below, all records and files relating to the Purchased Assets, including, but not limited to, inventory records, sales records, well files, cost and pricing information and supplier lists.

2. **Excluded Assets.** The Purchased Assets shall exclude the following (the "**Excluded Assets**"):

(a) cash (including money in bank accounts) and cash equivalents;

(b) all books of accounts, accounting records and employee files;

(c) all accounts receivable and prepaid expenses;

(d) all insurance policies relating to the Purchased Assets and all rights to applicable claims and proceeds thereunder;

(e) all deposits, prepaids, retainers and similar amounts made to vendors in connection with the Operations;

(f) all tax assets (including tax refunds, payments, and net operating losses) of the Debtor associated with the Purchased Assets;

(g) any claims in Debtor's estate under Chapter 5 of the Bankruptcy Code or analogous state statues including, but not limited to, claims under Section 547, 548, 549 or 550 of the Bankruptcy Code;

(h) any and all employee benefit plans and all assets and contracts associated with any employee benefit plans;

(i) the rights which accrue or will accrue to the Debtor under this Agreement and the documents and instruments delivered in connection herewith;

1290843.3

(j) all pending litigation or proceedings and all rights, claims, counterclaims, offsets and causes of action asserted or which could be asserted, including, without limitation, as a defense to any of the proofs of claim filed in the Debtor's chapter 7 Bankruptcy Case; and

(k) all equipment and property of any contractor or third party located on any of the Purchased Assets and not owned by the Debtor;

3. **[Reserved].**

4. **Excluded Liabilities.** The Purchaser shall not assume any debt, liability, obligation or commitment of the Debtor or the Debtor's estate in the Bankruptcy Case.

5. **[Reserved].**

6. **Purchase Price.**

(a) Purchase Price. Subject to the other terms and conditions of this Agreement, the consideration to be paid by the Purchaser to the Trustee for the Purchased Assets under this Agreement shall consist of Five Million One Hundred Fifty Thousand and No/ 100 Dollars ($5,150,000.00) in cash or other immediately available funds (the "***Unadjusted Purchase Price***").

(b) Deposit. Concurrently with the execution and delivery of this Agreement, Purchaser shall deposit by wire transfer in immediately available funds with Trustee, to be held in escrow by Trustee pending Closing, the sum of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) (such amount, together with any interest earned thereon, the "***Deposit***").

7. **Bankruptcy Matters.**

(a) Bid Procedures Order. The Trustee shall file or have filed a motion (the "***Bid Procedure Motion***") with the Bankruptcy Court requesting an order approving the sale of the Purchased Assets (the "***Bid Procedure Order***"). Pursuant to the Bid Procedures Order, the Trustee shall be authorized, among other things, to conduct a competitive sale process and solicit bids for the sale and purchase of substantially all of the Debtor's assets or any portion thereof, and, in the event more than one qualified bid is received for any assets of Debtor in accordance with such approved procedures, the Trustee will conduct an auction for such assets no later than ninety (90) days following the entry of the Bid Procedure Order. This Agreement and the transactions contemplated hereby (the "***Transactions***") are expressly subject to (i) the Bid Procedures Order and the approved sale process; (ii) any auction conducted in connection with such approved sale process, and (iii) the ultimate selection of this Agreement and the Transactions by the Trustee as the highest and best bid for the Purchased Assets following the completion of the approved sale process and auction.

(b) Stalking Horse Designation. Pursuant to the Bid Procedures Order (and subject to approval of the Court), the Trustee hereby designates Purchaser as a stalking horse purchaser (the "***Stalking Horse***") with respect to the Purchased Assets and will file a Notice of Designation of Stalking Horse with the Bankruptcy Court in conjunction with the Bid Procedures

Motion, disclosing such designation and the Stalking Horse Protections set forth in <u>Section 7(c)</u> of this Agreement.

(c) <u>Stalking Horse Protections</u>. Pursuant to (and conditioned upon entry of) the Bid Procedures Order, the Trustee hereby grants Purchaser the following stalking horse protections (the "***Stalking Horse Protections***") to the extent authorized by the Bid Procedures Order or other order of the Bankruptcy Court:

(i) <u>Breakup Fee and Expense Reimbursement</u>. The Trustee shall pay to Purchaser $250,000 (the "***Breakup Fee***"), only in the event that the Trustee consummates a sale or transfer of all or any material portion of the Purchased Assets in a single transaction or a series of related or unrelated transactions to one or more third parties whose bid(s) was or were: (A) selected by the Trustee as higher and better through the approved sale and auction process pursuant to the Bid Procedures Order, and (B) approved by the Bankruptcy Court. In the event that the Breakup Fee is payable pursuant to the preceding sentence, (1) the Breakup Fee shall be paid only out of the cash sale proceeds received from a sale of Purchased Assets to such third party, and (2) no lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee. If the Breakup Fee becomes due and payable, it shall be paid to Purchaser within ten (10) days of the event triggering payment of the Breakup Fee and shall be treated as an allowed administrative expense claim in the Bankruptcy Case. If the Breakup Fee becomes due and payable, the Breakup Fee and expense reimbursement shall constitute Purchaser's liquidated damages and shall be Purchaser's sole and exclusive remedy, and shall be senior to any liens, security interests, superiority claims and other interests in the Bankruptcy Case.

(ii) <u>Bidding Increments.</u> In the event more than one qualified bid is received by the Trustee in accordance with the procedures approved by the Bid Procedures Order for the Purchased Assets or any portion thereof, and an auction is held with respect to the Purchased Assets or any portion thereof, the initial overbid shall be $5,500,000 or more, and subsequent minimum bids shall be in increments of at least One Hundred Thousand Dollars ($100,000.00) greater than the then- existing highest bid for such assets.

(iii) <u>Stalking Horse as Qualified Bidder</u>. The Stalking Horse shall be deemed a qualified bidder for all purposes in connection with the Bid Procedures Order and auction, and shall have the right to submit and/or match any bids or overbids for the Purchased Assets made at auction. Purchaser may elect to match any successful bid or overbid after the conclusion of the auction, and if so elected, shall then be deemed the successful bidder with the highest and best bid for the Purchased Assets ("Successful Match Bid"). Upon the event Purchaser has a Successful Match Bid, the Break Up Fee shall not apply.

(d) <u>Sale Order</u>. This Agreement and the Transactions are contingent upon and subject to Purchaser: (i) being selected as the highest and best bid for the Purchased Assets following the conclusion of the approved bidding and auction process, and (ii) receiving approval

1290843.3

of the Bankruptcy Court through the entry of a Sale Order (the "**Sale Order**"). The Sale Order will provide, among other things, that pursuant to sections 105 and 363 of the Bankruptcy Code:

(i) the Purchased Assets shall be sold to Purchaser free and clear of all encumbrances (except for encumbrances approved by Purchaser and except for any assumed liabilities as expressly stated in such Sale Order);

(ii) to the extent that: (A) there are restrictions on the sale, assignment, transfer, conveyance or delivery, or attempted sale, assignment, transfer, conveyance or delivery, to Purchaser of any Purchased Asset or (B) the same would require the consent, authorization, approval or waiver of a person who is not a party to this Agreement or an affiliate of a party to this Agreement (including any governmental authority), then (1) such consent, authorization, approval or waiver is not required and/or (2) the Purchased Asset subject to such consent, authorization, approval or waiver shall be assigned or transferred regardless of any such restriction or necessary consent, authorization, approval or waiver and that there shall be no breach or adverse effect on the rights of the Trustee or Purchaser for the failure to obtain any such consent, authorization, approval or waiver or otherwise comply with such restriction;

(iii) the Transactions were negotiated at arm's length, that Purchaser acted in good faith in all respects and Purchaser shall be found to be a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code;

(iv) the terms and conditions of the sale of the Purchased Assets to Purchaser as set forth in this Agreement are approved;

(v) the Trustee is authorized to consummate the Transactions to comply in all respects with the terms of this Agreement;

(vi) Purchaser and the Trustee did not engage in any conduct that would allow the Transactions to be set aside pursuant to section 363(m) of the Bankruptcy Code; and

(vii) the Sale Order is binding upon any successors to the Debtor and the Trustee, including any successor trustees.

(e) From and after the Effective Date and until the closing date under this Agreement, the Debtor shall serve Purchaser with copies of all pleadings, motions, notices, statements, schedules, applications, reports, and other papers that are filed with the Bankruptcy Court at the time of their filing, but with respect to any such papers that Debtor may file that relate, in whole or in part, to this Agreement, or to Purchaser or its agents or representatives, the Debtor shall use reasonable efforts to provide such prior notice as may be reasonable under the circumstances before the filing of such papers. Notwithstanding the foregoing, after the Bid Procedures Order is entered, the Debtor shall not file any pleadings, motions, notices, statements, schedules, applications, reports or other papers in the Bankruptcy Case that would, or would

reasonably be expected to, alter, modify, limit, or restrict Purchaser's rights or remedies pursuant to this Agreement, without the prior written consent of Purchaser.

(f) From and after the Effective Date and prior to closing or termination of this Agreement in accordance with its terms, the Debtor shall not take any action that is intended to (or reasonably likely to), or fail to take any action the intent (or reasonably likely result) of which failure to act is to result in the reversal, voiding, modification or staying of this Agreement.

(g) Subject to the terms of the Bid Procedures Order, the Debtor agrees to pay Purchaser the Break Up Fee in the event this Agreement is terminated if and to the extent provided in Section 16.

**8. Closing; Post-Closing Access.**

(a) Closing. The consummation of the Transactions (the "***Closing***") shall take place at the offices of the Trustee, or at such other place mutually acceptable to the Trustee and Purchaser, as promptly as practicable after the conditions set forth in Sections 13, 14, and 15 shall have been satisfied or waived (except in the case of the condition set forth in Section 15(a) which cannot be waived), or at such other place and at such other time and date as may be mutually agreed upon in writing by the Purchaser and the Trustee. The date on which the Closing takes place is referred to as the "***Closing Date***."

(b) Closing Proceedings. All proceedings to be taken and all documents to be executed and delivered by the Trustee in connection with the consummation of the Transactions (the "***Sale***") shall be reasonably satisfactory in form and substance to the Purchaser and its counsel. All proceedings to be taken and all documents to be executed and delivered by the Purchaser in connection with the consummation of the Sale shall be reasonably satisfactory in form and substance to the Trustee and his counsel. All proceedings to be taken and all documents to be executed and delivered by all parties at the Closing shall be deemed to have been taken and executed simultaneously, and no proceedings shall be deemed taken nor any documents executed or delivered until all shall have been taken, executed and delivered.

(c) Risk of Loss. Risk of loss with respect to the Purchased Assets shall remain with the Trustee and the Debtor's estate in the Bankruptcy Case until the Closing, after which Purchaser shall bear the risk of loss.

(d) Possession. Possession of the Purchased Assets shall be delivered to Purchaser at the Closing.

**9. Due Diligence.**

(a) Title Due Diligence. From the date of this Agreement until 5:00 p.m. MT on the day that is sixty (60) days after the execution of this Agreement by Trustee and Purchaser, but in no event later than ten (10) days prior to the Closing Date (the "***Examination Period***"), and to the extent not already provided to Purchaser, Trustee agrees to disclose and make available to Purchaser and its representatives, at Trustee's offices in Denver, Colorado, and during normal

business hours, all records as may be reasonably requested by Purchaser that are available to Trustee for the purpose of permitting Purchaser to complete its due diligence review.

      (b)    <u>Title Matters</u>.

      (i)    During the Examination Period, Trustee shall afford to Purchaser and its authorized representatives reasonable access during normal business hours to the office, personnel, and books and records of Trustee in order for Purchaser to conduct a title examination as it may in its sole discretion choose to conduct with respect to the Purchased Assets in order to determine whether Title Defects (as defined below) exist ("***Purchaser's Title Review***").

      (ii)    If Purchaser discovers any Title Defect affecting any of the Purchased Assets, Purchaser shall notify Trustee of such alleged Title Defect on or before the expiration of the Examination Period (the "***Notice Date***"). Such notice ("***Title Notice***") must (i) be in writing addressed to Trustee, (ii) describe the Title Defect in reasonable detail, (iii) identify the specific Purchased Asset affected by such Title Defect, and (iv) include the value of such Title Defect as determined by Purchaser in good faith. Any matters that may otherwise constitute Title Defects, but of which Trustee has not been specifically notified by Purchaser in accordance with the foregoing on or prior to the Notice Date shall be deemed to have been waived by Purchaser for all purposes. Upon the receipt of a Title Notice from Purchaser, Trustee shall have the option, but not the obligation, to attempt to cure such Title Defect. The Purchased Asset affected by such uncured Title Defect shall be a "***Title Defect Property***."

      (iii)    With respect to each Title Defect that is not cured, the "***Title Defect Amount***" shall mean, with respect to a Title Defect Property, the amount by which such Title Defect Property is impaired as a result of the existence of one or more Title Defects, which amount shall be determined as follows: The Title Defect Amount with respect to a Title Defect Property shall be determined by taking into consideration the Allocated Value of the Purchased Asset subject to such Title Defect, the portion of the Purchased Asset subject to such Title Defect, and the legal effect of such Title Defect on the Purchased Asset or portion thereof affected thereby. For purposes of this Agreement, "***Allocated Value***" shall mean the value for each Purchased Asset as set forth in Exhibit A to this Agreement.

      (iv)    As used in this Section 9, "***Title Defect***" shall mean any particular defect in or failure of Trustee's/Debtor's ownership of any Purchased Asset that causes Trustee/Debtor to not have Defensible Title to such Purchased Asset. Notwithstanding any other provision in this Agreement to the contrary, the following matter shall not constitute, and shall not be asserted as, a Title Defect:

      1.    Defects or irregularities that have been cured or remedied by the applicable statutes of limitation or statutes for prescription.

2. Defects or irregularities in the chain of title consisting of the failure to recite marital status in documents or omissions of heirship proceedings; or, as to any Purchased Asset located in Tom Green County, Texas, any matter which is not considered an encumbrance or defect under the Texas Title Examination Standards, unless Trustee can provide evidence that any such encumbrance or defect or omission could reasonably be expected to result in another person's superior claim of title to the relevant property.

(v) As used in this Section 9, "**Defensible Title**" shall mean such title of Trustee/Debtor that (i) is free and clear of encumbrances, liens, and defects, and (ii) results in Trustee/Debtor owning not less than 158,960 gross mineral acres (132,417 net mineral acres) in Colfax County, New Mexico, and not less than 2,148 gross acres (1,610 net acres) of oil and gas mineral leases in Tom Green County, Texas.

(c) <u>Adjustments to Purchase Price for Title Defects; Termination for Title Defects</u>. The Unadjusted Purchase Price shall be decreased by an amount equal to the sum of all Title Defect Amounts, and the new amount shall be the "**Purchase Price**." If, however, Purchaser's Title Review reveals that Debtor's ownership in the Purchased Assets materially differs from the 158,960 gross mineral acres (132,417 net mineral acres) in Colfax County, New Mexico, and 2,148 gross acres (1,610 net acres) of oil and gas mineral leases in Tom Green County, Texas, purported to be owned by Debtor, Purchaser will have the right to terminate this Agreement, and to have the Deposit returned to it. For purposes of this Agreement, a difference in Debtor's purported ownership will be considered "material" if the sum of all Title Defect Amounts is greater than ten percent (10%) of the Unadjusted Purchase Price.

**10. Representations and Warranties of the Trustee on behalf of the Debtor.**

(a) On behalf of the Debtor's estate in the Bankruptcy Case, the Trustee represents and warrants to the Purchaser that each of the statements made in this Section 10 is true and correct as of the date of this Agreement and will be true and correct as of the Closing Date.

(i) <u>Authority</u>. Upon the entry of the Sale Order by the Bankruptcy Court, the Trustee will have all requisite power and authority to execute and deliver each document and instrument to be delivered in connection with the consummation of the Sale (each, an "**Other Transaction Document**" and collectively, the "**Other Transaction Documents**") and to perform its obligations hereunder and thereunder. Subject to the entry of the Sale Order, this Agreement constitutes, and each Other Transaction Document when executed and delivered will constitute, the legal, valid and binding obligation of the Debtor, enforceable against the Trustee and the Debtor's estate in the Bankruptcy Case in accordance with its terms.

(ii) <u>Title to Purchased Assets</u>. As of the Closing Date and subject to the entry of the Sale Order, the Trustee will have good and marketable title to the Purchased Assets, free and clear of liens, claims and encumbrances.

(iii)    <u>Legal Proceedings</u>. Except for the Debtor's Bankruptcy Case pending before the Bankruptcy Court, and related proceedings among certain creditors of the Debtor pending in Case No. D-809-CV-2015-00030, pending in the Eighth Judicial District Court for Colfax County, New Mexico, there is no judicial, administrative or arbitral action, suit or proceeding, public or private, pending in which the Trustee or the Debtor is a party or, to the Knowledge of the Trustee, threatened against the Trustee. For purposes of this Agreement, the term "Knowledge of the Trustee" means the actual knowledge of Trustee.

(iv)    <u>No Broker</u>. Except for those persons whose fees and expenses shall be the sole responsibility of the Trustee, such as Energy Advisors Group, LLC pursuant to the Marketing and Services Agreement approved by the Bankruptcy Court at ECF No. 298 in the Bankruptcy Case, no person, firm, corporation or other entity has acted directly or indirectly as a broker, finder or financial adviser for the Trustee or the Trustee in connection with the Sale, and no person, firm, corporation or other entity is entitled to any fee, commission or like payment in respect thereof, based in any way on any agreement, arrangement or understanding made by or on behalf of the Trustee or the Debtor's estate in the Bankruptcy Case.

(b)    OTHER THAN AS SET FORTH IN THIS AGREEMENT, PURCHASER AGREES THAT NO REPRESENTATIONS OR WARRANTIES BY OR ON BEHALF OF THE DEBTOR OR THE TRUSTEE HAVE BEEN MADE TO PURCHASER, OR THE SUITABILITY OF THE PURCHASED ASSETS FOR ANY PURPOSE WHATSOEVER; AND THAT EXCEPT AS SET FORTH THIS AGREEMENT, PURCHASER IS BUYING THE PURCHASED ASSETS "AS IS, WHERE IS" AND "WITH ALL FAULTS". PURCHASER REPRESENTS TO THE DEBTOR'S ESTATE IN THE BANKRUPTCY CASE AND THE TRUSTEE THAT THE PURCHASER HAS MADE ITS OWN INDEPENDENT INVESTIGATION OF THE PURCHASED ASSETS AND DEBTOR'S TITLE AND INTEREST THEREIN AND IS RELYING SOLELY ON SUCH INDEPENDENT INVESTIGATION IN MAKING ITS DECISION TO ACQUIRE THE PURCHASED ASSETS.

**11.    Representations and Warranties of Purchaser.**  Purchaser represents and warrants to the Trustee that each of the statements made in this Section 11 is true and correct as of the date of this Agreement and will be true and correct as of the Closing Date.

(a)    <u>Organization and Authority</u>. Any Permitted Assignee of Purchaser will be an entity duly organized, validly existing, and in good standing under the laws of its state of formation and will have full corporate power and authority to own, lease and operate its assets, properties and rights and to carry on its business as it is expected to be conducted.

(b)    <u>Authority</u>. Purchaser has all requisite power and authority to execute and deliver this Agreement and each Other Transaction Document and to perform his obligations hereunder and thereunder. The execution, delivery and performance by Purchaser of this Agreement and each Other Transaction Document has been duly authorized by all necessary action on the part of Purchaser. This Agreement constitutes, and each Other Transaction

Document when executed and delivered will constitute, the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

(c) <u>Legal Proceedings</u>. There is no judicial, administrative or arbitral action, suit or proceeding, public or private, pending in which the Purchaser is a party or, to the Knowledge of Purchaser, threatened against Purchaser. For purposes of this Agreement, the term "Knowledge of Purchaser" means the actual knowledge of Purchaser.

(e) <u>Sources of Financing</u>. The Purchaser has available to him sufficient cash resources, a firm, unconditional equity commitment and/or a firm, unconditional financing commitment in an aggregate amount not less than the aggregate Unadjusted Purchase Price to be paid by Purchaser pursuant to this Agreement.

12. **Covenants of the Trustee and the Purchaser.**

(a) <u>Bankruptcy Actions</u>. As soon as practicable following the execution and delivery of this Agreement by the Purchaser and the Trustee, the Trustee shall take all steps necessary to obtain the entry of the Sale Order, in a form reasonably acceptable to Trustee and Purchaser and their respective counsel, approving this Agreement, the Trustee's performance hereunder and the Sale of the Purchased Assets to the Purchaser pursuant to Section 363(b)(1) and (f) of the Bankruptcy Code, free and clear of all liens, claims, interests and encumbrances, and the treatment of the Purchaser as a purchaser in good faith under Section 363(m) of the Bankruptcy Code. The Trustee shall use reasonable good faith efforts to obtain the entry by the Bankruptcy Court of the Sale Order at hearings scheduled for such purpose, and the Trustee shall endeavor to obtain entry of the Sale Order within fourteen (14) days of the auction proceedings pursuant to the Bid Procedures Order.

(b) <u>Further Assurances</u>. Before and after the Closing, each party shall execute and deliver such instruments and take such other actions as the other may reasonably request for the purpose of carrying out the intent of this Agreement and the Other Transaction Documents. Each Party shall use its best efforts to cause the Transactions to be consummated, and, without limiting the generality of the foregoing, to use best efforts to seek all consents and authorizations of government agencies and third parties and to use best efforts to make all filings with and give all notices to government agencies and third parties that may be necessary or reasonably required to effect the Transactions.

13. **Conditions to Purchaser's Obligations.** The obligation of Purchaser under this Agreement to deliver the Purchase Price and to execute and deliver the Other Transaction Documents on the Closing Date shall be subject to the satisfaction (or waiver, in writing, by Purchaser) of each of the following conditions:

(a) <u>Representations and Warranties True</u>. The representations and warranties of the Trustee contained in this Agreement and in the Other Transaction Documents shall be true and correct as of the Closing Date.

(b) <u>No Damage or Destruction of Purchased Assets; Title Defects</u>.  No material portion of the Purchased Assets shall have been damaged, destroyed or taken by condemnation, whether or not covered by any insurance policy, after the date of this Agreement and before the Closing Date.  The Unadjusted Purchase Price shall not have been reduced by more than ten percent (10%) as a result of cumulative Title Defect Amounts.

(c) <u>Consents</u>.  All filings with and consents from government agencies and third parties required to consummate the Sale shall have been made or obtained.

(d) <u>Closing Deliveries</u>.  The Trustee shall execute and deliver or cause to be delivered to the Purchaser at the Closing the following documents and instruments:

(i) a trustee's deed for conveyance of the Debtor's Mineral Rights in New Mexico and Texas (the "**Deed**");

(ii) a bill of sale (the "**Bill of Sale**") for conveyance of the Debtor's Personal Property; and

(iii) such other documents, instruments or certificates as shall be reasonably requested by the Purchaser or its counsel.

**14.     Conditions to Obligations of the Trustee.**  The obligations of Trustee under this Agreement to execute and deliver the Other Transaction Documents on the Closing Date shall be subject to the satisfaction (or waiver, in writing, by the Trustee) of each of the following conditions:

(a) <u>Representations and Warranties True</u>.  The representations and warranties of the Purchaser contained in this Agreement and in the Other Transaction Documents shall be true and correct as of the Closing Date.

(b) <u>Performance of Undertakings</u>. The Purchaser shall have performed and complied in all material respects with all agreements, obligations and conditions required by this Agreement or any Other Transaction Documents to be performed or complied with by it on or before the Closing Date.

(c) <u>Consents</u>. All filings with and consents from government agencies and third parties required to consummate the Sale shall have been made or obtained.

(d) <u>Closing Deliveries</u>:

(i) The Purchaser shall pay to the Trustee the Purchase Price via wire transfer in immediately available funds; and

(ii) The Purchaser shall execute and deliver such other documents, instruments or certificates as shall be reasonably requested by the Trustee or its counsel.

1290843.3

15. **Conditions to Both Parties' Obligations.** The obligations of the Trustee, on the one hand, and Purchaser, on the other hand, under this Agreement to consummate the Sale on the Closing Date shall be subject to satisfaction of each of the following conditions, none of which may be waived by either party:

(a) The Bankruptcy Court shall have entered the Sale Order;

(b) The Sale Order shall have become a Final Order. For purposes of this Agreement, the term "*Final Order*" shall mean that (i) the implementation or operation of the order shall not have been stayed, and (ii) the time to appeal, petition for certiorari or move for reargument or rehearing shall have expired, and no appeal, petition for certiorari or motion for reargument or rehearing shall then be pending or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing was sought, shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; and

(c) No judicial, administrative or arbitral action, suit or proceeding shall have been commenced, the purpose of which is, or which might result in, preventing the consummation of the Sale of the Purchased Assets to the Purchaser.

16. **Termination**.

(a) <u>Termination Events</u>. This Agreement may be terminated at any time before the Closing Date by any of the following:

(i) by the written agreement of the Trustee and the Purchaser;

(ii) at the election of the Trustee if any condition set forth in <u>Section 14</u> of this Agreement is not satisfied or becomes incapable of fulfillment and is not waived by the Trustee;

(iii) at the election of the Purchaser if (i) any condition set forth in <u>Section 13</u> of this Agreement is not satisfied or becomes incapable of fulfillment and is not waived by the Purchaser or (ii) pursuant to Section 9(c);

(iv) by either party if the Bankruptcy Court does not enter the Sale Order on or before ninety (90) days after (i) the entry of the Bid Procedure Order or (ii) the date that is ten (10) days after the conclusion of the Examination Period, unless such date is otherwise extended by written agreement of the Parties;

(iv) by either party if the Sale Order does not become a Final Order on or before fifteen (15) days after entry of the Sale Order;

(v) by the Trustee, if the Trustee consummates a sale or transfer of all or a material portion of the Purchased Assets to a third party whose bid was (A)

selected by the Trustee as a higher and better bid through the approved sale and auction process pursuant to the Bid Procedure Order, and (B) approved by the Bankruptcy Court; or

(vi) by either party if any judicial, administrative or arbitral action, suit or proceeding shall have been commenced, the purpose of which is, or which might result in, preventing the consummation of the sale of the Purchased Assets to the Purchaser.

(b) Effect of Termination. In the event of termination under Section 16(a)(v), the Debtor shall pay to Purchaser the Break Up Fee as provided in Section 7. Except as provided below, in the event of termination under Section 16 (except Section 16(a)(v)), the Trustee shall return the Deposit to the Purchaser, and all further obligations of the Trustee and the Debtor's estate in the Bankruptcy Case to the Purchaser, and of the Purchaser to the Trustee and the Debtor's estate in the Bankruptcy Case, under this Agreement shall terminate without further liability of the Purchaser, the Trustee or the Debtor's estate in the Bankruptcy Case. Nevertheless, anything in this Agreement to the contrary notwithstanding, if any of the conditions to the respective obligations of the Purchaser or the Trustee specified in Section 13 or Section 14 have not been satisfied, the Purchaser or the Trustee, as the case may be, in addition to any other rights which may be available to them, shall have the right to waive such conditions, to the extent permitted by applicable law, and to proceed with, and to require the other party hereto (subject to the satisfaction of the respective conditions of its obligations under Section 13 or Section 14, as the case may be) to proceed with the Closing and the consummation of the Sale.

(c) Termination Caused by Breach by Purchaser or Failure of Certain Conditions. In the event that this Agreement is terminated by the Trustee by reason of a breach thereof by Purchaser, or by the Purchaser's failure to meet a condition set forth in Section 14 over which it has control, the Trustee shall be deemed to have waived any claim for loss of bargain and shall be entitled to retain the Deposit in full as liquidated damages and not as a penalty. In such event, the Purchaser shall stand relieved of any further liability to the Trustee or the Debtor's estate in the Bankruptcy Case.

(d) Termination Caused by Failure of Title. In the event that this Agreement is terminated by Purchaser pursuant to Section 9(c), Trustee will return the Deposit to Purchaser, and all further obligations of the Trustee and the Debtor's estate in the Bankruptcy Case to the Purchaser, and of the Purchaser to the Trustee and the Debtor's estate in the Bankruptcy Case, under this Agreement shall terminate without further liability of the Purchaser, the Trustee or the Debtor's estate in the Bankruptcy Case.

17. **Miscellaneous**.

(a) Entire Agreement. This Agreement, together with all Exhibits attached hereto, and the Other Transaction Documents, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior oral and written agreements between the parties with respect to the subject matter hereof.

1290843.3

(b) <u>Governing Law</u>. This Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of Colorado without regard to the conflicts of law provisions thereof, and as applicable in the Debtor's Bankruptcy Case, the Bankruptcy Code.

(c) <u>Severability</u>. In the event that any provision of this Agreement shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby, so long as the remaining provisions do not fundamentally alter the relations between the parties.

(d) <u>Expenses</u>. Each of the parties shall bear its own expenses (including, without limitation, fees and disbursements of counsel, accountants and experts) incurred by it in connection with the preparation, negotiation, execution, delivery and performance of this Agreement and the Other Transaction Documents.

(e) <u>Notices</u>. All notices, requests and other communications to either party shall be in writing and shall be given by personal delivery, facsimile, electronic mail, certified mail, return receipt requested, or by recognized overnight courier service, to a party at the following address, or to such other address as such party may have specified by notice given to the other party pursuant to this provision:

<u>If to the Trustee, to</u>:

Harvey Sender, Chapter 7 Trustee
600 17th Street, Suite 2800-South
Denver, CO 80202
Email: hsender@sendersmiley.com

<u>With a copy to</u>:

John C. Smiley
Katharine Sender
1720 South Bellaire, Suite 205
Denver, CO 80222
Fax: 1-866-230-8268
Jsmiley@sendersmiley.com
ksender@cohenlawyers.com

<u>If to Purchaser, to</u>:

J. Bradford Smith
1776 Peachtree St. NW, Suite 100
Atlanta, Georgia 30309
Email: bsmith@tpa-grp.com

1290843.3

        <u>With a copy to</u>:

        John Massouh
        Michelle Sibley
        701 S. Taylor, Suite 500
        Amarillo, Texas 79101
        Fax:  806-373-3454
        john.massouh@sprouselaw.com
        michelle.sibley@sprouselaw.com

(f) <u>Binding Effect; Beneficiaries; Assignment</u>. Except for an assignment by Purchaser to a Permitted Assignee (as hereinafter defined), no party may transfer any of its rights or obligations under this Agreement without the express, written consent of the other party, and any such attempted transfer in violation of this Agreement shall be null and void.  For purposes of this Agreement, the term "Permitted Assignee" shall mean a legal entity formed by Purchaser, Bailey Peyton (or his nominee), and Mark C. McMillan for the purpose of owning and operating the Purchased Assets.  To be effective, an assignment to a Permitted Assignee shall (i) be fully executed by the assignor and the Permitted Assignee thereunder and delivered to Trustee at or prior to Closing, and (ii) contain a provision whereby the Permitted Assignee assumes all of the obligations of Purchaser under this Agreement.  Upon an assignment of this Agreement to a Permitted Assignee, as used in this Agreement, the "Purchaser" shall be deemed to include such Permitted Assignee.  Subject to the foregoing, this Agreement shall inure to the benefit of and shall be binding upon Seller and Purchaser and their respective successors and assigns.  In the event of an assignment to a Permitted Assignee, Purchaser shall be relieved of liability under this Agreement, and the Permitted Assignee shall assume all rights and the responsibility for all obligations arising under this Agreement.

(g) <u>Amendments</u>. This Agreement may be amended, supplemented or modified only pursuant to a written instrument making specific reference to this Agreement signed by both of the parties hereto. Any provision of this Agreement may be waived only pursuant to a written instrument making specific reference to this Agreement signed by the party or Parties entitled to waive the applicable provision.

(h) <u>Waiver</u>. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

(i) <u>Counterparts</u>. This Agreement may be executed and delivered (including facsimile transmission or ".pdf" format my electronic mail) in multiple counterparts, all of which, taken together, shall be considered one and the same agreement and shall be effective when all such counterparts have been signed by each of the parties and delivered to the other party, it being understood that all parties need not sign the same counterpart.

(j) <u>No Presumption</u>. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting or causing any instrument to be drafted.

[SIGNATURE PAGE FOLLOWS]

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TRUSTEE:

The Chapter 7 Bankruptcy Estate of Sun River Energy, Inc., Case No. 15-15610 MER

By: _____
Harvey Sender, in his capacity as Chapter 7 Bankruptcy Trustee, Case No. 15-15610 MER

PURCHASER:

_____
J. BRADFORD SMITH

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TRUSTEE:

The Chapter 7 Bankruptcy Estate of Sun River Energy, Inc., Case No. 15-15610 MER

By:_____
Harvey Sender, in his capacity as Chapter 7 Bankruptcy Trustee, Case No. 15-15610 MER

PURCHASER:

_____
J. BRADFORD SMITH

Schedule 1(b)

(List of Personal Property per § 1(b))

To be determined and updated prior to Closing